UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAILY NEWS, LP; CHICAGO TRIBUNE COMPANY, LLC; ORLANDO SENTINEL COMMUNICATIONS COMPANY, LLC; SUN-SENTINEL COMPANY, LLC; SAN JOSE MERCURY- NEWS, LLC; DP MEDIA NETWORK, LLC; ORB PUBLISHING, LLC; and NORTHWEST PUBLICATIONS, LLC,

Plaintiffs,

v.

MICROSOFT CORPORATION, OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO, LLC, OPENAI GLOBAL, LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC,

Defendants.

Case No. 1:24-cv-03285-SHS

**DEFENDANT MICROSOFT CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS THE COMPLAINT**

July 2, 2024

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I. PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTRIBUTORY INFRINGEMENT BASED ON USER OUTPUTS. ............................................................................................ 2

   A. The Complaint Alleges No Instance of End-User Copyright Infringement. ...................... 2

   B. The Complaint Fails To Allege Microsoft's Knowledge Of Direct Infringement. ............. 3

II. PLAINTIFFS FAIL TO STATE A DMCA § 1202 CLAIM. ................................................... 5

   A. The Complaint Does Not Plausibly Allege Microsoft's Intent To Induce, Enable, Facilitate, Or Conceal Infringement By Removal Of CMI. .................................................. 6

   B. The Complaint Does Not Plausibly Allege "Removal" Of CMI From Copies Of Identical Works. ................................................................................................................... 7

III. PLAINTIFFS' MISAPPROPRIATION CLAIM IS PREEMPTED BY THE COPYRIGHT ACT. ................................................................................................................................. 9

IV. PLAINTIFFS' STATE LAW DILUTION CLAIM IS BARRED BY THE DORMANT COMMERCE CLAUSE. ..................................................................................................... 9

CONCLUSION ....................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*,
  667 F. Supp. 3d 411 (S.D. Tex. 2023) ................................................................................... 8

*Andersen v. Stability AI Ltd.*,
  No. 23-cv-00201, 2023 WL 7132064 (N.D. Cal. Oct. 30, 2023) ............................................ 7

*Arista Recs., Inc. v. MP3Board, Inc.*,
  No. 00-cv-4660, 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) ............................................. 4

*Arista Recs. LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) .................................................................................................. 4

*Arista Recs. LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009) ............................................................................... 3, 4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 3

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018) ................................................................................................. 4

*Doe 1 v. GitHub*,
  No. 22-cv-06823-JST (N.D. Cal. June 24, 2024), ECF No. 253 ................................... 5, 7, 8

*Dress Barn, Inc. v. Klauber Bros., Inc.*,
  No. 18-cv-8085, 2019 WL 1949675 (S.D.N.Y. Apr. 22, 2019) ............................................. 5

*Field Day, LLC v. Cnty. of Suffolk*,
  463 F.3d 167 (2d Cir. 2006) ................................................................................................ 10

*Free Speech Sys., LLC v. Menzel*,
  390 F. Supp. 3d 1162 (N.D. Cal. 2019) ................................................................................. 7

*Hartmann v. Amazon.com, Inc.*,
  No. 20-cv-4928, 2021 WL 3683510 (S.D.N.Y. Aug. 19, 2021) ............................................ 5

*Lopez v. Bonanza.com, Inc.*,
  No. 17-cv-8493, 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) ............................................ 5

*Luvdarts, LLC v. AT & T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) ............................................................................................... 4

*Matthew Bender & Co. v. West Publ'g Co*,
  158 F.3d 693 (2d Cir. 1998) .............................................................................................. 2, 4

*Melendez v. Sirius XM Radio, Inc.*,
    50 F.4th 294 (2d Cir. 2022) .................................................................................................. 3

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023) ............................................................................................................ 10

*NBA v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997) ................................................................................................. 9

*New London Assocs., LLC v. Kinetic Soc. LLC*,
    384 F. Supp. 3d 392 (S.D.N.Y. 2019) .................................................................................. 5

*Planck LLC v. Particle Media, Inc.*,
    No. 20-cv-10959, 2021 WL 5113045 (S.D.N.Y. Nov. 3, 2021) ........................................... 8

*State St. Glob. Advisors Tr. Co. v. Visbal*,
    431 F. Supp. 3d 322 (S.D.N.Y. 2020) .................................................................................. 5

*Stevens v. Corelogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018) ............................................................................................ 6, 7

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010) ................................................................................................... 5

*Tremblay v. OpenAI, Inc.*,
    No. 23-cv-03223, 2024 WL 557720 (N.D. Cal. Feb. 12, 2024) ....................................... 3, 7

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 192 (2d Cir. 2012) .............................................................................................. 4, 5

**Statutes**

17 U.S.C. § 1202(b)(3) ................................................................................................................. 6

**Other Authorities**

Fed. R. Civ. P. 8 ........................................................................................................................... 3

**PRELIMINARY STATEMENT**

If Plaintiffs' Complaint contained a single real-world instance of a GPT-based product outputting a copy of one of their works, their opposition to Microsoft's motion to dismiss would tout it early and often. Instead, it is bluster and misdirection from top to bottom.

On contributory infringement, Plaintiffs' only solution to their failure to allege specific instances of *end-user* infringement is to act confused and cite their "core" claim concerning alleged infringement by *Defendants* during training. Opp. 1. To clear it up: A contributory infringement claim requires a showing of real-world direct infringement by someone other than Microsoft, and Microsoft's knowledge of it. Plaintiffs, despite knowing from the *New York Times* case that they would face this argument, allege no such instance, so the claim fails. *Infra* § I.

On their § 1202(b) claim, Plaintiffs have no answer to the expanding string cite of decisions rejecting such challenges to LLM-based tools—and seem to have lost the thread entirely. The only examples they offer of purported CMI violations are outputs that literally provide the author, title, and publication of the source material while linking directly to it. But § 1202(b) is an anti-piracy statute, and Plaintiffs never explain how an output that explicitly *provides attribution for source material* could be objectively likely to *facilitate piracy* through removal of CMI. That this non-starter is their only argument confirms the claims fail. *Infra* § II.

As for their misappropriation claim, Plaintiffs' attempt to make out the sort of hot-news theory that survives preemption misses the mark by a wide margin. Those claims lie when a defendant misappropriates breaking news in order to be the one who breaks it. Plaintiffs cite no breaking news and claim only misappropriation *after* they have published the news themselves on the internet, dooming their claim. *Infra* § III. And last, Plaintiffs fail to defend state-law

1

dilution claims that would directly regulate the offering and use of GPT-based products nationwide.  *Infra* § IV.  The motion should be granted.

## ARGUMENT

### I. PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTRIBUTORY INFRINGEMENT BASED ON USER OUTPUTS.

As Microsoft's Motion explained, the Complaint fails to allege a specific instance of end-user infringement or Microsoft's knowledge of any such act at the time it occurred.  Mot. 8-12.

#### A. The Complaint Alleges No Instance of End-User Copyright Infringement.

Plaintiffs do not contest that for Microsoft to have contributed to infringement of their works, they must allege direct infringement of their works by someone other than Microsoft.  But nowhere in the "entire section" they claim to devote to end-user infringement do they point to a single instance where their works were infringed.  Opp. 8 (citing Comp. ¶¶ 142-56).  The cited portions of the Complaint allege *generally* that "the GPT models have the propensity to 'memorize' training materials."  Compl. ¶ 144.  And they describe *generalized* "reporting" and "conversations online" to argue "GPT models can reproduce copyrighted content."  Compl. ¶¶ 145-46; *see* Opp. 10 (citing Compl. ¶¶ 142-47).  But many online services are used by some people at some time to infringe some works—that hardly permits any plaintiff to sue Facebook or X claiming that at some point there must have been infringement of the *plaintiff's* works.  The defect is simple:  Plaintiffs have not alleged a single instance in which a user has used a GPT-based product to infringe any of Plaintiffs' works (much less one that Microsoft knew about).

Plaintiffs cannot manufacture a claim by pointing to output coaxed by Plaintiffs' own "generated outputs."  Opp. 9.  Plaintiffs accuse Microsoft of "downplay[ing] th[is] infringing output."  *Id.* at 8.  There is no infringement to downplay—an author cannot infringe its own works because it is logically impossible to violate one's own exclusive rights.  That is why the

Second Circuit rejected Plaintiffs' self-infringement tactic in *Matthew Bender & Co. v. West Publ'g Co.*, explaining that the plaintiff "failed to identify any primary infringer, other than [its own] counsel." 158 F.3d 693, 706 (2d Cir. 1998).

Plaintiffs finish by touting "the importance of discovery." Opp. 9. But Rule 8 will not permit Plaintiffs to comb through voluminous user data based on nothing but bare hypothesis. "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (quotation omitted). As it stands, Plaintiffs offer only the sorts of "conclusory assertions … of an impermissible use [and] hypotheticals in support of those conclusions" that cannot "support a plausible … claim." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022); *Tremblay v. OpenAI, Inc.*, No. 23-cv-03223, 2024 WL 557720, at *2-3 (N.D. Cal. Feb. 12, 2024) (dismissing secondary infringement claim at the pleading stage).

### B.  The Complaint Fails To Allege Microsoft's Knowledge Of Direct Infringement.

Even if Plaintiffs had identified some needle of user infringement within the haystack of lawful use of GPT-based products, they have failed to allege that Microsoft had legally sufficient knowledge of that act such that Microsoft could have contributed to it. Mot. 10-11. Microsoft's Motion explained that contributory liability is appropriate only where a defendant (a) has knowledge of "specific acts of infringement" and (b) has "actual knowledge," as opposed to mere constructive knowledge, of those acts. *Id.* at 10. Plaintiffs so plainly fail to establish *any* degree of knowledge of a specific act that this Court need not even address whether actual or constructive knowledge of such specific acts is required.

Plaintiffs first argue that the "law in this circuit" does not require "'knowledge of specific infringements.'" Opp. 10 (quoting *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 154 (S.D.N.Y. 2009)). But the cases they cite do not address the question of *generalized-versus-*

3

*specific* knowledge—they pertain only to the question of *actual-versus-constructive* knowledge, and in each one the defendant possessed extensive knowledge of specific acts.[1] Meanwhile, two circuits have extensively analyzed the issue and demanded specific knowledge, *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013), *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 310 (4th Cir. 2018); *Matthew Bender* has rejected a theory of knowledge based on "hypothesized" infringement, 158 F.3d at 706 & 707 n.23; and the Second Circuit has adopted a specific-knowledge requirement in *Viacom Int'l, Inc. v. YouTube, Inc.* for the related Digital Millenium Copyright Act safe harbor, 676 F.3d 19, 32 (2d Cir. 2012). Plaintiffs offer no response because there is none.

    Plaintiffs also point to no allegations of a specific act or acts of infringement that Microsoft knew of and then contributed to—again, because there is none. Their response is just insinuation based on understandings Microsoft allegedly gleaned from development or operation of GPT-based products generally. Opp. 12-13. None of this remotely suggests that Microsoft learned of a user prompt, knew it would cause infringement, and then contributed to that infringement. Indeed, the only allegation of Microsoft's real-time knowledge of user behavior is the vague claim of "Defendants' programming of their systems to flag infringing outputs and prompts seeking infringing outputs." *Id.* at 13. But Plaintiffs *do not* claim that Defendants flagged an instance of infringement *and then permitted it*—for all that is alleged, Defendants could have flagged *and blocked* any such output.

---

[1] *Usenet.com*, 633 F. Supp. 2d at 155 ("[O]n many occasions, Defendants' users explicitly told Defendants' … employees that they were engaged in copyright infringement."); *Arista Recs., Inc. v. MP3Board, Inc.*, No. 00-cv-4660, 2002 WL 1997918, at *7 (S.D.N.Y. Aug. 29, 2002) ("posted links [to infringing music] themselves promoted their illegal nature"); *Arista Recs. LLC v. Doe 3*, 604 F.3d 110, 121 (2d Cir. 2010) ("identif[ication] on a Defendant-by-Defendant basis …[of] the IP address with the date and time of capture and a list of copyrighted recordings that each Defendant has … downloaded and/or distributed").

Nor have Plaintiffs pled "willful blindness" to any specific infringement. Opp. 12. Willful blindness is conscious avoidance of a fact that is tantamount to actual knowledge of that fact. As the Second Circuit put it in *Viacom*, Plaintiffs have failed to plead "'willful[] blind[ness]' to specific infringing activity," because they have failed to plead any "specific infringing activity" at all. 676 F.3d at 34. Plaintiffs' own authorities (*see* Opp. 12-13) support this conclusion. In *Tiffany (NJ) Inc. v. eBay Inc.*, the Second Circuit rejected the contention that eBay could be willfully blind to trademark infringement based only on "general" knowledge that Tiffany's products were "sold through its website" because no "specific counterfeit listings" were "brought to its attention." 600 F.3d 93, 109 (2d Cir. 2010).

Last, Plaintiffs again invoke "discovery," Opp. 11, chiding Microsoft for citing cases decided after the pleading stage. *Id.* at 8. Five recent cases dismissing such claims from this district alone are noted here.[2] Courts routinely dismiss deficient claims like this.

## II. PLAINTIFFS FAIL TO STATE A DMCA § 1202 CLAIM.

Plaintiffs offer this Court no reason to depart from the growing line of cases that have repeatedly and decisively rejected § 1202 claims advanced against LLMs, Mot. 12-20—most recently, the conclusive rejection of a § 1202 challenge to GitHub and Microsoft's Copilot generative AI coding tool in *Doe 1 v. GitHub*, No. 22-cv-06823-JST (N.D. Cal. June 24, 2024), ECF No. 253.[3]

---

[2] *Hartmann v. Amazon.com, Inc.*, No. 20-cv-4928, 2021 WL 3683510, at *7 (S.D.N.Y. Aug. 19, 2021); *Lopez v. Bonanza.com, Inc.*, No. 17-cv-8493, 2019 WL 5199431, at *24- 25 (S.D.N.Y. Sept. 30, 2019); *Dress Barn, Inc. v. Klauber Bros., Inc.*, No. 18-cv-8085, 2019 WL 1949675, at *5 (S.D.N.Y. Apr. 22, 2019); *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 358 (S.D.N.Y. 2020); *New London Assocs., LLC v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 410 (S.D.N.Y. 2019).

[3] Though the parties in *Doe 1* have stipulated that there is no confidential information in the district court's order, it remains provisionally under seal at this time. Microsoft will promptly submit the decision as supplemental authority when it is unsealed.

### A. The Complaint Does Not Plausibly Allege Microsoft's Intent To Induce, Enable, Facilitate, Or Conceal Infringement By Removal Of CMI.

Plaintiffs acknowledge that they must allege Microsoft's awareness that removal of CMI will somehow "induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b)(3); *see* Opp. 14-15. And they do not contest that to establish this, they must allege an objective likelihood that in the real world, removal of CMI would plausibly facilitate piracy or decrease Plaintiffs' ability to detect such infringement. *See Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018). Yet despite an initial promise of "copious detail," Opp. 14, they immediately backtrack and plead for discovery, knowing their "sparse" allegations are insufficient to show that CMI removal will have any effect on infringement.

***Training and development***. Plaintiffs argue that "by removing the Publishers' CMI during training, the Defendants prevent the CMI from being 'retained within the GPT models and/or displayed when the GenAI products disseminate unauthorized copies of the Publishers' Works to end-users.'" Opp. 15 (quoting Compl. ¶ 159). According to Plaintiffs, this conceals Defendants' *own* (alleged) infringement during training. *Id*. But Plaintiffs never explain how alleged removal of CMI from some work during the behind-the-scenes training process could conceal something that otherwise would be known—or why *retaining* CMI at the model training stage matters at all.

***Allegedly infringing output***. Plaintiffs also cannot allege that CMI removal facilitates or conceals end-user infringement. The Complaint does not plausibly allege end-user infringement in the first place. *Supra* 2-3. But even if it did, Plaintiffs fail entirely to allege facts establishing that the absence of CMI somehow facilitates or conceals such conduct. Mot. 9, 15.

Certainly the Complaint's contrived prompts—most of which require the prompter to *already know* the source of an article and possess text from it—could never solve this defect.

6

*See* Mot. 16. As Microsoft explained (without dispute), even if such users and prompts existed in the real world, the Complaint offers no reason to believe that the presence or absence of CMI would make a bit of difference to that user behavior or to its detection. *Id.*

Plaintiffs respond by pointing to two examples in the Complaint where Plaintiffs used a search-engine-style query for an article about a particular topic, rather than including text from the original article. Opp. 18 (citing Compl. ¶¶ 130, 168). Reliance on these examples is borderline frivolous. In both of the instances cited, *the output identified the publisher and title of the article excerpted while hyperlinking to the materials' source on the internet. See* Compl. ¶¶ 130, 168. Plaintiffs attempt no explanation for how the absence of any CMI in these prompts—if any CMI even is absent—would lead to piracy where the output is obviously designed to both cite and help the user *locate* the source material the same way a search engine does.

Last, Plaintiffs once again ask for discovery to fix pleading defects, while noting that *Stevens* was decided on summary judgment. Opp. 17, 18. But courts routinely apply *Stevens*'s rule at the motion to dismiss stage. Mot. 17 (citing *Tremblay*, 2024 WL 557720, at *4-5; *Andersen v. Stability AI Ltd.*, No. 23-cv-00201, 2023 WL 7132064, at *10 (N.D. Cal. Oct. 30, 2023); *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1174-75 (N.D. Cal. 2019)).

### B. The Complaint Does Not Plausibly Allege "Removal" Of CMI From Copies Of Identical Works.

It is now beyond dispute that § 1202(b) requires a plaintiff to show active "removal" of CMI from an identical copy of a work. *See* Order at 4, *Doe 1*, No. 22-cv-06823-JST (N.D. Cal. June 24, 2024), ECF No. 253 (dismissing § 1202(b) claims with prejudice because plaintiffs failed § 1202(b)'s identicality requirement). As the Motion explained, the Complaint fails to do so here because it describes most outputs of the GPT-based products as "excerpts," "quotes," or

7

"paraphrases." Mot. 19-20. Plaintiffs do not argue that such outputs could sustain a CMI claim, nor could they in the face of extensive case law holding otherwise. *Id.* at 18-19.

Plaintiffs attempt to avoid dismissal by again relying on a handful of examples in which they prompted Microsoft's Copilot tool specifically requesting a particular article and the tool allegedly output the "full text"—while also specifically identifying the article with information like the title, publication, author, and date of the material, along with a hyperlink to the original source. Opp. 18-19; *see* Compl. ¶¶ 118, 121, 136, 165. Again, even if this self-initiated conduct were a permissible tactic, it is quite stunning that Plaintiffs are even attempting to predicate a § 1202(b) claim on these outputs. The user has *asked for a particular article* and the output has *identified the article and its source*. It is inconceivable that any absence of CMI in these outputs—and, again, it is not clear what CMI is allegedly even missing—would somehow facilitate or conceal piracy, as § 1202(b) requires, *supra* 6-7. So these few examples of allegedly identical copies do not save Plaintiffs' claim.

Finally, Plaintiffs cite two cases supposedly doubting the identicality requirement—one permitting a case to move forward on the basis of "infringing excerpts," *Planck LLC v. Particle Media, Inc.*, No. 20-cv-10959, 2021 WL 5113045, at *6 (S.D.N.Y. Nov. 3, 2021), and one suggesting that the DMCA does not "include[] an 'identical copy' requirement," *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411, 427 (S.D. Tex. 2023). There is no discussion of the identicality requirement in *Planck*; the court did not rule on it. *See* 2021 WL 5113045, at *6. And the out-of-circuit decision in *ADR* has been decisively rejected by other courts, *see Doe 1 v. GitHub*, *supra*, at 4, and cannot be reconciled with the statutory text, *see* Mot. 17-18.

8

### III. PLAINTIFFS' MISAPPROPRIATION CLAIM IS PREEMPTED BY THE COPYRIGHT ACT.

Plaintiffs also fail to plead the sort of "narrow 'hot-news' misappropriation claim" that escapes Copyright Act preemption. *NBA v. Motorola, Inc.*, 105 F.3d 841, 852 (2d Cir. 1997). *See* Mot. 20-23; Opp. 20. To state such a claim, Plaintiffs need to plead appropriation of news with "time-sensitive value" "*precisely* at the point where the profit is to be reaped"—the claim lies only against defendants who appropriate breaking news in order to break it themselves. 105 F.3d at 851 (emphasis added). Yet Plaintiffs point only to news like the "Yankees schedule" or a "lunar eclipse," Opp. 21, and claim only that an output references already-published articles "on the same day or within two days," *id.*—nowhere do they claim that GPT-tools have usurped their ability to break any news. Nor do they plausibly allege that referencing their articles has tangibly affected subscription revenue or traffic, let alone the far more stringent requirement that the "existence or quality" of Plaintiffs' work is "substantially threatened." *NBA*, 105 F.3d at 845.

Though Plaintiffs again assert that dismissal is inappropriate at the pleading stage, they cite no case that has ever allowed a claim to survive based only on alleged references to news after the plaintiff has published it. And Plaintiffs concede that where (as here) a plaintiff fails to plead the elements of a narrow hot-news claim, courts have not hesitated to dismiss misappropriation claims at the pleading stage. *See* Mot. 23; Opp. 23.

### IV. PLAINTIFFS' STATE LAW DILUTION CLAIM IS BARRED BY THE DORMANT COMMERCE CLAUSE.

Finally, the Motion explained that Plaintiffs' state law trademark dilution claim is barred by the Dormant Commerce Clause. Mot. 23-25. Plaintiffs describe this argument as "astonishing," Opp. 23, but it is anything but. Plaintiffs ask the Court to use one state's law to directly regulate transactions between Defendants and the users of GPT-based products

9

everywhere in the country—something that violates basic principles of federalism as well as the most recent holdings of the Supreme Court. Mot. 24-25.

Plaintiffs invoke *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), for the proposition that "[c]ompanies that choose to sell products in various States must normally comply with the laws of those various States." Opp. 24 (quoting *Nat'l Pork Producers*, 598 U.S. at 364, 371). But what Plaintiffs are seeking here is a ruling that directly regulates out-of-state transactions—not one that merely has "practical" extraterritorial "effects." Mot. 25. *National Pork Producers* expressly rejects the use of state law to "directly regulate[] out-of-state transactions." 598 U.S. at 376 n.1 (emphasis omitted).

Plaintiffs claim that a dormant Commerce Clause challenge must be "directed to the statute, not to a claim under the statute." Opp. 25. But it is elementary that an application of a law can be unconstitutional even where the law itself otherwise passes muster. *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). Plaintiffs finally suggest that there is no extraterritorial regulation to see here because one (of eight) Plaintiffs, the New York Daily News, "is a New York newspaper." Opp. 25. That is irrelevant: Plaintiffs seek a permanent injunction regulating the GPT-based products with respect to out-of-state-users. Federal, not state, law is the appropriate vehicle for Plaintiffs' complaints about their trademarks.

## **CONCLUSION**

The Court should grant the partial motion to dismiss in its entirety.

| | |
|---|---|
| Dated: New York, New York<br>July 2, 2024 | Orrick, Herrington & Sutcliffe LLP<br><br>By: */s/ Annette L. Hurst*<br>Annette L. Hurst (*Pro Hac Vice*)<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105-2669<br>Telephone: (415) 773-5700<br>Facsimile: (415) 773-5759<br>ahurst@orrick.com<br><br>Christopher J. Cariello<br>51 West 52nd Street<br>New York, NY 10019<br>Telephone: (212) 506-3778<br>Facsimile: (212) 506-5151<br>ccariello@orrick.com<br><br>Sheryl Koval Garko (*Pro Hac Vice*)<br>222 Berkley Street<br>Boston, MA 02116<br>Telephone: (617) 880-1800<br>Facsimile: (617) 880-1801<br>sgarko@orrick.com<br><br>Laura Brooks Najemy (*Pro Hac Vice*)<br>222 Berkley Street<br>Boston, MA 02116<br>Telephone: (617) 880-1800<br>lnajemy@orrick.com<br><br>*Attorneys for Defendant*<br>*Microsoft Corporation* |