**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DAILY NEWS, LP; CHICAGO TRIBUNE COMPANY, LLC; ORLANDO SENTINEL COMMUNICATIONS COMPANY, LLC; SUN-SENTINEL COMPANY, LLC; SAN JOSE MERCURY-NEWS, LLC; DP MEDIA NETWORK, LLC; ORB PUBLISHING, LLC; AND NORTHWEST PUBLICATIONS, LLC,

               Plaintiffs,

    v.

MICROSOFT CORPORATION, OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO, LLC, OPENAI GLOBAL, LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC,

               Defendants.

Case No. 1:24-cv-03285-SHS-OTW

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF OPENAI DEFENDANTS' MOTION TO DISMISS**

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT..........................................................................................................1

    **A.**   Plaintiffs Cannot Sue for Conduct Occurring More than Three Years Ago............1

    **B.**   Plaintiffs Misconstrue the "Knowledge" Requirement for Contributory Liability................................................................................................................2

    **C.**   The DMCA Claim Fails for Multiple Independent Reasons ..................................5

    **D.**   The "Misappropriation" Claim Cannot Escape Preemption....................................9

    **E.**   The Dilution Claim Fails Due to Lack of Fame ......................................................10

III. CONCLUSION.......................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*689 Eatery Corp. v. City of New York*,
  Nos. 02-cv-4431, 02-cv-4432, 02-cv-8333, 18-cv-3732, 2024 WL 519967 (S.D.N.Y. Feb. 9, 2024) ................................................................................................................. 6

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ........................................................................................ 4

*A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*,
  No. CV 12-02215, 2012 WL 12921035 (C.D. Cal. Aug. 8, 2012) .................................. 9

*ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*,
  667 F. Supp. 3d 411 (S.D. Tex. 2023) ............................................................................ 9

*Argo Contracting Corp. v. Paint City Contractors,*
  No. 00 Civ. 3207, 2000 WL 1528215 (S.D.N.Y. Oct. 16, 2000) .................................... 5

*Arista Recs. LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009) ............................................................................ 4

*Arista Recs., Inc. v. Flea World, Inc.*,
  No. 03-CV-2670, 2006 WL 842883 (D.N.J. Mar. 31, 2006) .......................................... 4

*Arista Recs., Inc. v. Mp3Board, Inc.*,
  No. 00-cv-4660, 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) ..................................... 4

*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ....................................................................................... 3, 4

*Barclays Cap., Inc. v. Theflyonthewall.com, Inc.*,
  650 F.3d 876, 900 (2d Cir. 2011) ................................................................................. 10

*BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018) ...................................................................................... 2, 3

*Bose BV v. Zavala*,
  No. 09-cv-11360, 2010 WL 152072 (D. Mass. Jan. 14, 2010) ....................................... 6

*BWP Media USA Inc. v. Hollywood Fan Sites*, LLC,
  69 F. Supp. 3d 342 (S.D.N.Y. 2014) .............................................................................. 4

*Cable/Home Comm'cn Corp. v. Network Sys.*,
  902 F.2d 829 (11th Cir. 1990) ........................................................................................ 4

*Capitol Recs., LLC v. ReDigi Inc.*,
  934 F. Supp. 2d 640 (S.D.N.Y. 2013) .................................................................................. 4

*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015) ............................................................................................................ 2

*CoxCom, Inc. v. Chaffee,*
  536 F.3d 101 (1st Cir. 2008) ............................................................................................... 6

*Davis v. Sedgwick Claims Mgmt. Servs. Inc.*,
  No. 21-cv-7090, 2023 WL 6150009 (S.D.N.Y. Aug. 30, 2023) ....................................... 10

*DigitAlb, Sh.a v. Setplex, LLC*,
  284 F. Supp. 3d 547 (S.D.N.Y. 2018) .............................................................................. 10

*Dodds v. Cigna Sec., Inc.*,
  12 F.3d 346 (2d Cir. 1992) .................................................................................................. 2

*Doe 1 v. GitHub, Inc.*,
  672 F. Supp. 3d 837 (N.D. Cal. 2023) ................................................................................ 8

*Doe 1 v. GitHub, Inc.*,
  No. 22-cv-0682, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ........................................ 8, 9

*Fischer v. Forrest*,
  286 F. Supp. 3d 590 (S.D.N.Y. 2018) ................................................................................ 9

*Furnituredealer.net, Inc. v. Amazon.com, Inc.*,
  No. 18-cv-232, 2022 WL 891473 (D. Minn. Mar. 25, 2022) ............................................. 5

*Gershwin Pub. Corp. v. Columbia Artists Mgmt. Inc.,*
  443 F.2d 1159 (2d Cir. 1971) .............................................................................................. 4

*Global-Tech Appliances, Inc. v. SEB S.A.*
  563 U.S. 754, 766, 769–71 (2011) ............................................................................. 2, 4, 5

*Hartmann v. Popcornflix.com LLC*,
  690 F. Supp. 3d 309 (S.D.N.Y. Sept. 5, 2023) .................................................................... 3

*In re Aimster Copyright Litig.*,
  334 F.3d 643 (7th Cir. 2003) ............................................................................................... 4

*Kelly v. Arriba Soft Corp.*,
  77 F. Supp. 2d 1116 (C.D. Cal. 1999), *rev'd on other grounds*, 336 F.3d 811 (9th Cir.
  2003) .................................................................................................................................... 7

*Lefkowitz v. John Wiley & Sons, Inc.,*
  13-cv-6414, 2014 WL 2619815 (S.D.N.Y. June 2, 2014) ................................................... 3

*Lopes v. Mellon Inv. Serv. LLC*,
  No. 07-cv-5928, 2007 WL 4258189 (S.D.N.Y. Dec. 3, 2007) .................................................. 5

*Luvdarts, LLC v. AT&T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) ................................................................................................ 3

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ................................................................................................................ 3

*Minden Pictures, Inc. v. Buzzfeed, Inc.*,
  390 F. Supp. 3d 461 (S.D.N.Y. 2019) ..................................................................................... 1

*New York City Triathalon v. NYC Triathalon Club, Inc.*,
  704 F. Supp. 2d 305 (S.D.N.Y. 2010) ................................................................................... 10

*Ortiz v. Consol. Edison Corp. of New York*, 22-cv-8957,
  No. 22-cv-8957, 2024 WL 3086161 (S.D.N.Y. June 7, 2024) .............................................. 10

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ................................................................................................ 8

*Psihoyos v. John Wiley & Sons, Inc.*,
  748 F.3d 120 (2d. Cir. 2014) ................................................................................................... 1

*Rosen v. Amazon.com, Inc.*,
  No. 14-cv-2115, 2014 WL 12597073 (C.D. Cal. May 28, 2014) ........................................... 5

*Snail Games USA Inc. v. Tencent Cloud LLC*,
  No. 22-cv-02009, 2022 WL 3575425 (C.D. Cal. June 6, 2022) ............................................. 5

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ................................................................................................................ 3

*State St. Glob. Advisors Tr. Co. v. Visbal,*
  431 F. Supp. 3d 322 (S.D.N.Y. 2020) ................................................................................ 3, 5

*Steele v. Bongiovi,*
  784 F. Supp. 2d 94 (D. Mass. 2011) ....................................................................................... 6

*TransUnion LLC v. Ramirez*,
  549 U.S. 413 (2021) ................................................................................................................ 6

*Warner Chappell Music, Inc. v. Nealy*,
   144 S. Ct. 1135 (2024) ........................................................................................................... 1

*Y.Y.G.M. SA v. Redbubble, Inc.*,
  75 F.4th 995 (9th Cir. 2023) .................................................................................................... 4

## STATUTES

17 U.S.C. § 507(b) ........................................................................................................................ 2

17 U.S.C. § 1202(b) .................................................................................................................... 10

17 U.S.C. § 1202(b)(1) ............................................................................................................... 10

17 U.S.C. § 1203(a) ...................................................................................................................... 9

## OTHER AUTHORITIES

Jennifer Langston, *Microsoft Announces New Supercomputer, Lays Out Vision for Future AI Work*, Microsoft (May 19, 2020), https://news.microsoft.com/source/features/ai/openai-azure-supercomputer/) ........................... 1

The New York Times, *Meet GPT-3, The Natural-Language System That Generates Tweets, Pens Poetry, Summarizes Emails, Answers Trivia, Translates Languages and Even Writes Its Own Computer Programs* (Nov. 25, 2020), *reprinted by* Plaintiff Chicago Tribune Company LLC, https://www.chicagotribune.com/2020/11/25/meet-gpt-3-the-natural-language-system-that-generates-tweets-pens-poetry-summarizes-emails-answers-trivia-translates-languages-and-even-writes-its-own-computer-programs/ ..................................................................................................................... 2

I.      INTRODUCTION

Plaintiffs levy myriad complaints about OpenAI's motion to dismiss. But nowhere do they identify a legally sound basis to permit their contributory infringement, DMCA, misappropriation, and trademark claims to proceed. Nor do they identify a basis to ignore the statutory time-bar to their claims based on pre-2021 conduct. The result that is warranted here is the same one courts across the country have reached in indistinguishable circumstances—dismissal of the infirm claims to focus on the core issue in these cases: the quintessential fair use that occurs when parties use publicly available information to extract uncopyrightable ideas and facts about language and the world to create a large language model that powers transformative generative artificial intelligence.

II.     ARGUMENT

   A.     Plaintiffs Cannot Sue for Conduct Occurring More than Three Years Ago

Plaintiffs' claims based on conduct that occurred more than three years ago are time barred for two reasons. First, notwithstanding Second Circuit law to the contrary,[1] the Copyright Act "does not tolerate a discovery rule." *Warner Chappell Music, Inc. v. Nealy*, 144 S. Ct. 1135, 1140 (2024) (Gorsuch, J., dissenting). Second, if the discovery rule exists, the clock starts ticking once plaintiffs have "cause to be put on inquiry notice," which can arise from mere "suspicion" of an injury. *Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019). Here, public reporting in 2020 about OpenAI's creation of models trained on "billions of pages of publicly available documents on the internet"[2] was enough to provide "the means of knowledge" and impose a "duty of inquiry" into the matter. *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d

---

[1] *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124–25 (2d. Cir. 2014).

[2] *See, e.g.*, Compl. ¶ 67 & n.11 (citing Jennifer Langston, *Microsoft Announces New Supercomputer, Lays Out Vision for Future AI Work*, Microsoft (May 19, 2020), https://news.microsoft.com/source/features/ai/openai-azure-supercomputer/).

Cir. 1992). Indeed, these very facts were reported on by at least one of the Plaintiffs.[3] And the Complaint itself points to publicly available information from 2019 that Plaintiffs say identify their specific domains as included in OpenAI's training data. *See* Compl. ¶ 82 nn.21, 23. Plaintiffs do not deny that they were contemporaneously aware of the pre-2021 conduct alleged in the Complaint. Nor do they provide any explanation for why they waited to file suit until April 2024. To the extent Plaintiffs' copyright and DMCA claims target conduct that occurred more than three years ago, those claims are time barred and should be dismissed under 17 U.S.C. § 507(b).

        **B.**      <u>Plaintiffs Misconstrue the "Knowledge" Requirement for Contributory Liability</u>

Plaintiffs seek to hold OpenAI liable for contributory infringement based on the theory that a defendant can be liable if it "should have known" of general, unspecified alleged acts of infringement. Opp. 9–13. That is not the law. Rather, contributory infringement requires two critical elements that Plaintiffs fail to allege: (1) "actual knowledge" or "willful blindness" of (2) specific acts of infringement. As to the former, the Supreme Court has rejected, in the patent context, imposition of secondary liability based on the "should have known" standard Plaintiffs invoke here, holding instead that "actual knowledge" or "willful blindness" is required. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 636–37 (2015); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769–71 (2011). As the Fourth Circuit has since held, that rule applies with equal force to claims for contributory copyright infringement. *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 309 (4th Cir. 2018). The basis for that conclusion is "'the historic kinship between patent law and copyright law' and the [] need in

---

[3] Plaintiff Chicago Tribune republished a New York Times article on this very subject. *See* The New York Times, *Meet GPT-3, The Natural-Language System That Generates Tweets, Pens Poetry, Summarizes Emails, Answers Trivia, Translates Languages and Even Writes Its Own Computer Programs* (Nov. 25, 2020), *reprinted by* Plaintiff Chicago Tribune Company LLC, https://www.chicagotribune.com/2020/11/25/meet-gpt-3-the-natural-language-system-that-generates-tweets-pens-poetry-summarizes-emails-answers-trivia-translates-languages-and-even-writes-its-own-computer-programs/.

both contexts to [limit] liability [to] circumstances involving 'culpable expression and conduct' without 'discouraging the development of technologies with lawful and unlawful potential.'" *Id.* (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439–42 (1984), and *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37 (2005)).

As to the need to allege specific infringing acts, Plaintiffs' argument flouts binding precedent: in *Grokster*, the Supreme Court explained that courts may not "presum[e] or imput[e] intent . . . solely from the design or distribution of a product capable of substantial lawful use"— even if the product's manufacturer "***knows [it] is in fact used for infringement***." 545 U.S. at 932–33.[4]  Instead, the "requisite mental state"—"actual knowledge" or "willful blindness"—"must be tied to *specific* infringements." *BMG*, 881 F.3d at 310–11; *see also Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072–73 (9th Cir. 2013)*;* Mot. 11.  Every court in this district to analyze the issue has agreed. *See, e.g.*, *Lefkowitz v. John Wiley & Sons, Inc.*, No. 13-cv-6414, 2014 WL 2619815, at *11 (S.D.N.Y. June 2, 2014) (holding, in light of *Grokster*, that "general awareness that third parties allegedly infringed" was "not sufficient"); *see also* Mot. 11 n.18.[5]

Plaintiffs ignore *BMG*, *Commil*, *Grokster*, and *Ludvarts*.  Instead, they urge the Court to rely on a passage in *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010), where the court, in summarizing general copyright principles, stated that a defendant who has "reason to know" of infringement can be contributorily liable.  *See id.* at 117–18; Opp. 9.  *Doe 3* cannot save Plaintiffs' contributory infringement claim.  First, that decision predates the Supreme Court's rejection of the "should have known" standard.  But regardless, the passage on which Plaintiffs rely is dictum:

---

[4] Emphasis added and citations omitted throughout unless otherwise noted.

[5] Plaintiffs ignore Judge Failla's analysis of this issue in *Lefkowitz*, and brush off OpenAI's other cases by focusing on stray references to the words "should have known" or "constructive," *see* Opp. 9 n.3, while entirely overlooking those courts' careful explanations that "generalized knowledge by the defendant of the possibility of infringement" does not suffice.  *See, e.g.*, *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 358 (S.D.N.Y. 2020); *see also Hartmann v. Popcornflix.com LLC*, 690 F. Supp. 3d 309, 319–20 (S.D.N.Y. 2023) (similar).

3

*Doe 3* had nothing to do with contributory liability. 604 F.3d at 116. And even if it were binding, the "reason to know" phrasing corresponds to a willful blindness standard,[6] which requires more than an allegation that the defendant "should have known." See *Global-Tech*, 563 U.S. at 769 (distinguishing willful blindness from lower "recklessness" standard). *Doe 3* also reinforces the need to allege knowledge of *specific* infringement: the decisions on which *Doe 3* relies when referring to a "reason to know" standard, *see* 604 F.3d at 117–18, all held that "*actual*, *specific* knowledge of direct infringement"—or willful blindness to the same—is required.[7] The other cases to which Plaintiffs point are equally unavailing—all involved undisputed evidence (or allegations) of actual knowledge of, or willful blindness to, specific infringements—without any discussion of whether negligence or generalized knowledge of infringement would have sufficed.[8]

Measured against the proper standard, the Complaint does not allege that OpenAI had the requisite knowledge to be liable for contributory copyright infringement (nor can it). Mot. 9–11. Plaintiffs point to (1) the alleged inclusion of third-party GPTs that remove paywalls in the Custom GPT store, (2) statements they say suggest that OpenAI knew some "users were using ChatGPT's

---

[6] *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1001 (9th Cir. 2023).

[7] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020–22 (9th Cir. 2001); *see also id.* (defendant cannot be liable "merely because the . . . system allows for the exchange of copyrighted material," relying instead on "*actual* knowledge that *specific* infringing material is available" (emphasis in original)); *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) ("Willful blindness is knowledge, in copyright law."); *Cable/Home Comm'cn Corp. v. Network Sys.*, 902 F.2d 829, 846 (11th Cir. 1990) (defendant "encouraged the duplication" of computer program he "actually knew" to be copyrighted); *Gershwin Pub. Corp. v. Columbia Artists Mgmt. Inc.,* 443 F.2d 1159, 1162–63 (2d Cir. 1971) (defendant knew of particular infringing works performed at concerts).

[8] *See Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 132–33 (S.D.N.Y. 2009) (defendant published "[web]pages devoted to [specific] artists" and "expressly promoted the availability of 'FREE MUSIC'"); *Capitol Recs., LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 645–46 (S.D.N.Y. 2013) (defendant operated a "marketplace" of "digital music files" and provided "thirty-second clips," "album cover art," and other "promotional material"); *Arista Recs., Inc. v. Mp3Board, Inc.*, No. 00-cv-4660, 2002 WL 1997918, at *1, 7–8 (S.D.N.Y. Aug. 29, 2002) (defendant knew of filenames like "SUPERiLLEGAL MP3z" and its staff "personally searched for links to songs and posted" them in response to "requests"); *Arista Recs., Inc. v. Flea World, Inc.*, No. 03-CV-2670, 2006 WL 842883, at *16 (D.N.J. Mar. 31, 2006) (defendant's staff "personally visited" vendors' booths and checked for prohibited items, investigators informed defendants of "specific booth numbers of vendors selling counterfeit sound recordings," and market experienced multiple raids during which "thousands of counterfeit [materials] were seized"); *BWP Media USA Inc. v. Hollywood Fan Sites*, LLC, 69 F. Supp. 3d 342, 356 (S.D.N.Y. 2014) (defendants allegedly "encouraged" webmasters to "steal" photographs for websites where "the most conspicuous use of the websites is the display [of] Plaintiff's [sic] stolen photographs").

4

Browse with Bing plug-in to circumvent paywalls," (3) OpenAI's alleged general awareness of training data regurgitation, (4) "many" "widely publicized" examples of alleged "infringement after ChatGPT . . . [was] released," and (5) OpenAI's alleged "ability to monitor" users of ChatGPT.  Opp. 9–13; Compl. ¶ 141.  None of this is an allegation that a ChatGPT user generated a copy of any of Plaintiffs' articles, much less with OpenAI's specific awareness—which is what the law would require to state a claim.  *Visbal*, 431 F. Supp. 3d at 358.

As a final effort to save this claim, Plaintiffs argue that their "allegations suggest willful blindness."  Opp. 13.  But willful blindness requires that the defendant took "deliberate actions to avoid learning of" the infringement.  *Global-Tech*, 563 U.S. at 769; *see supra* at 4.  Plaintiffs make no such allegations here (and again, nor can they).[9]

### C. The DMCA Claim Fails for Multiple Independent Reasons

*Plaintiffs lack constitutional standing for their training-based claim.*  Plaintiffs attempt to manufacture Article III standing for their training-based claim by arguing that "'a chain of events resulting from the removal of the CMI *could* result in harm to' the Publishers"—namely, alleged harm from the potential distribution of Publishers' works.  Opp. 14–16 (quoting *Furnituredealer.net, Inc. v. Amazon.com, Inc.*, No. 18-cv-232, 2022 WL 891473, at *26 (D. Minn. Mar. 25, 2022.  Two flaws in Plaintiffs' position independently require dismissal.

First, the Supreme Court has held that an Article III injury must be "actual or imminent"

---

[9] Plaintiffs also ask the Court to overlook their pleading failures in the hope that discovery will provide the factual basis their complaint lacks.  Opp. 12.  But a plaintiff "has no right to obtain discovery on a claim that he has not adequately pled."  *Lopes v. Mellon Inv. Serv. LLC*, No. 07-cv-5928, 2007 WL 4258189, at *3 (S.D.N.Y. Dec. 3, 2007).  The cited cases do not suggest otherwise.  *See Snail Games USA Inc. v. Tencent Cloud LLC*, No. 22-cv-02009, 2022 WL 3575425, at *1–2, 5 (C.D. Cal. June 6, 2022) (claim adequately stated because notice "informed defendant of [specific] infringement"); *Rosen v. Amazon.com, Inc.*, No. 14-cv-2115, 2014 WL 12597073, at *1–2 (C.D. Cal. May 28, 2014) (same).  And *Argo Contracting Corp. v. Paint City Contractors*, which is not a copyright case, held that where a plaintiff alleged the existence of a specific written agreement that it did not possess, discovery should be permitted.  No. 00-cv-3207, 2000 WL 1528215 (S.D.N.Y. Oct. 16, 2000).  That is inapposite here where Plaintiffs have not alleged the existence of any specific document.

5

and thus must be based on more than a "speculative chain of possibilities." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 (2011). Yet that is all Plaintiffs allege here—a "chain of events" which they say "*could* result in harm." Opp. 14. Nowhere do Plaintiffs allege that they have suffered any actual, cognizable harm—or are at risk of imminent harm—from the alleged Section 1202(b)(1) violation.[10] That is fatal to Plaintiffs' claim.[11]

Second, Plaintiffs' training-based claim is premised on an allegation of statutory harm, in contravention of *TransUnion LLC v. Ramirez*, 549 U.S. 413 (2021). Plaintiffs tacitly concede that they suffer no tangible, concrete harm as a result of their training-based claim. Instead, they contend that the harm from alleged dissemination of their works constitutes cognizable harm not just for their output-based claim, but *also* their training-based claim. Opp. 15. But Plaintiffs cannot bootstrap the harm that underlies their Section 1202(b)(3) output-based claim into their Section 1202(b)(1) training-based claim. *See 689 Eatery Corp. v. City of New York*, Nos. 02-cv-4431, 02-cv-4432, 02-cv-8333, 18-cv-3732, 2024 WL 519967, at *59 (S.D.N.Y. Feb. 9, 2024) ("Plaintiffs must establish standing to challenge each provision" where different provisions "operate in different ways."). Alleged harm from dissemination is an entirely different injury, for which Plaintiffs press an entirely different claim. *See* Compl. ¶¶ 221, 223. Standing "is not dispensed in gross." *TransUnion*, 594 U.S. at 431. Plaintiffs must therefore establish standing "for every claim [they] seek[] to press." *Id.* They have not done so.

*Plaintiffs lack statutory standing*. To have statutory standing under the DMCA, a plaintiff must allege an injury *from* the alleged DMCA violation. *See Steele v. Bongiovi*, 784 F. Supp. 2d

---

[10] Even the pre-*Clapper* case on which Plaintiffs rely, *CoxCom, Inc. v. Chaffee*, recognizes that plaintiffs must allege an "actual or imminent" harm. 536 F.3d 101, 108 (1st Cir. 2008).

[11] The cases to which Plaintiffs point rely on a pre-*Clapper* standard and are thus inapposite. *See Furnituredealer.net*, 2022 WL 891473, at *26 (relying on *CoxCom* to find standing); *CoxCom, Inc.*, 536 F.3d at 108 (pre-*Clapper* decision); *Bose BV v. Zavala*, No. 09-cv-11360, 2010 WL 152072, at *2 (D. Mass. Jan. 14, 2010) (pre-*Clapper* decision).

94, 97–98 (D. Mass. 2011); *see also* 17 U.S.C. § 1203(a).  The only alleged injuries Plaintiffs identify are (1) the creation of a "false impression that [Defendants] had permission to copy and distribute the Publishers' works," Opp. 15; Compl. ¶ 169, and (2) the "undermin[ing] [of] the Publishers' licensing and subscription arrangements" by "providing the Publishers' Works directly to readers," Opp. 15; Compl. ¶ 187.  Neither constitutes "injur[y] by" a DMCA violation, 17 U.S.C. § 1203(a), because these alleged injuries would exist regardless of whether CMI was displayed.  *Cf. Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *rev'd on other grounds*, 336 F.3d 811 (9th Cir. 2003) (DMCA claim failed because images included a link to the source website where CMI was available).

*The Training-Based DMCA Claim Fails.*  Plaintiffs seek to avoid dismissal on myriad bases, none of which works.  First, they contend the claim is not time barred both because of the discovery rule (which, as explained above, is inapplicable) and because ChatGPT's 2023 "knowledge cutoff" date allegedly shows that "Defendants are 'continuing to create and use unauthorized copies'" of Plaintiffs' works.  Opp. 17 (quoting Compl. ¶ 89).  But Plaintiffs' training-based claim is premised on removal of CMI that allegedly occurred when OpenAI created the WebText training datasets more than three years ago.  What matters for that claim is when the "remov[al]" occurred, see 17 U.S.C. § 1202(b)(1)—not whether OpenAI continued to use the datasets after that removal.  Second, Plaintiffs tacitly acknowledge that the Complaint fails to allege that the "third-party datasets" OpenAI allegedly used included any CMI to begin with.  Instead, they urge the Court to *assume* that Common Crawl, a third party, must have included Plaintiffs' CMI because it is purportedly a "copy of the Internet."  Opp. 17.  But Plaintiffs do not explain their failure to specifically allege that Common Crawl—a publicly available source— included CMI that OpenAI could have subsequently removed.

7

Third, Plaintiffs insist they have adequately pleaded that OpenAI's supposed removal of CMI from training datasets was committed with "reasonable grounds to know[] that it will induce, enable, facilitate, or conceal" OpenAI's use of Plaintiffs' articles as training data. 17 U.S.C. § 1202(b); Opp. 17–18. But Plaintiffs make no attempt to explain how that "concealment" would operate, or to reconcile this assertion with the examples of OpenAI's services candidly disclosing that the text provided in outputs was published by Plaintiffs. *See, e.g.*, Compl. ¶ 106. As Plaintiffs' own cases establish, pleading a CMI claim requires a plaintiff to plausibly allege facts that would support a reasonable inference that the defendant intended to facilitate or conceal infringement.[12] Plaintiffs' failure to do so here requires dismissal.[13]

*The Output-Based DMCA Claim Fails.* OpenAI identified multiple reasons the output-based claim fails, none of which Plaintiffs successfully refute. First, Plaintiffs do not defend the Section 1202(b)(1) output-based claim. *See* Opp. 17–20; *cf.* Compl. ¶ 221. On that basis alone, the Section 1202(b)(1) output-based claim should be dismissed. Second, for the Section 1202(b)(3) output-based claim, Plaintiffs concede that an allegation of distribution is required and contend they have so alleged in paragraph 97 of the Complaint. *See* Opp. 19. Paragraph 97, however, says that "Chat GPT *displays*" Publishers' works; it says nothing about distribution. As Plaintiffs' own case establishes, the display of a work is different than the distribution of a work, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159–62 (9th Cir. 2007).

Plaintiffs also attempt to avoid the requirement that CMI be removed from an identical

---

[12] *Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 173 (2d Cir. 2020) (finding of scienter was proper where defendant "should have reasonably known that altering the gutter credit to include a false attribution" would "conceal[]" infringement); *Reiffer v. NYC Luxury Limousine Ltd.*, No. 22-cv-2374, 2023 WL 4029400, at *8 (S.D.N.Y. June 15, 2023) (scienter reasonably inferred based on the fact that "Defendant admitted that it knew that the CMI had been removed).

[13] In *Doe 1 v. GitHub, Inc.* the plaintiffs included additional allegations relevant to scienter, including that "GitHub knew that CMI was important for protecting copyright interests" and that "GitHub regularly processed DMCA takedowns." 672 F. Supp. 3d 837, 858 (N.D. Cal. 2023). None of that is alleged here. Regardless, the *Doe 1* court eventually dismissed all of the DMCA claims in that case for other deficiencies that are present here too. *See Doe 1 v. GitHub, Inc.*, No. 22-cv-0682, 2024 WL 235217, at *9 (N.D. Cal. Jan. 22, 2024).

work by pointing to a Southern District of Texas decision that had nothing to do with AI to argue that there is no "identical work" requirement. *See* Opp. 19 (citing *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411, 430 (S.D. Tex. 2023)). But as essentially every other court to have considered the question has concluded, alleged removal of CMI must involve a work that was "substantially or entirely reproduced." *Fischer v. Forrest*, 286 F. Supp. 3d 590, 609 (S.D.N.Y. 2018).[14] The same conclusion is warranted here.

Finally, Plaintiffs contend (Opp. 20) that they should be permitted to maintain a Section 1202(b)(3) claim based on the alleged removal of CMI from excerpted text fragments that ChatGPT produced despite the fact that such fragments, even in their original form, never contained any CMI. Mot. 19–20. The text of the "first five paragraphs" of the *Oroville Dam* article in Mercury News, for example, does not include a "copyright notice[]" or anything else that qualifies as CMI, *see* Compl. ¶¶ 105–107; 17 U.S.C. § 1202(c). So when Plaintiffs asked ChatGPT to reproduce it, ChatGPT's allegedly obliging response *also* did not include any CMI. Compl. ¶ 106. OpenAI could not have "removed" CMI from these paragraphs because there was no CMI to remove. Plaintiffs' response—that "the relevant text here refers to the Publishers' works from which CMI has been removed" (*i.e.*, the input)—is just misdirection. Opp. 20. The relevant text for a claim based on outputs is, of course, the output.

D.      The "Misappropriation" Claim Cannot Escape Preemption

Plaintiffs attempt to avoid dismissal of their preempted misappropriation claim by arguing that (a) Plaintiffs alleged the use of time-sensitive content in paragraphs 118–138 of the Complaint, and (b) Plaintiffs alleged the "passing off" of Plaintiffs' content as OpenAI's in paragraphs 130,

---

[14] *Doe 1*, 2024 WL 253217, at *9; *Tremblay v. OpenAI, Inc.*, No. 23-cv-03223, 2024 WL 557720, at *5 (N.D. Cal. Feb. 12, 2024); *A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*, No. 12-cv-02215, 2012 WL 12921035, at *10 (C.D. Cal. Aug. 8, 2012); *see* Mot. 19 & n.27.

9

131, and 168 of the Complaint. All of the allegations identified by Plaintiffs, however, address Copilot—a Microsoft product that allegedly summarized news found via Internet searches. *See* Compl. ¶¶ 118–138, 168. Nowhere have Plaintiffs alleged that *OpenAI* took time-sensitive news and passed such news off as its own. *See Ortiz v. Consol. Edison Corp. of New York*, No. 22-cv-8957, 2024 WL 3086161, at *8 (S.D.N.Y. June 7, 2024) (explaining that "plaintiffs cannot simply lump defendants together for pleading purposes"). That alone condemns Plaintiffs claim. *See Barclays Cap., Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 900, 903 (2d Cir. 2011).

### E. The Dilution Claim Fails Due to Lack of Fame

Plaintiffs have not plausibly alleged that the trademarks at issue are "famous" such that the marks are "almost universally recognized by the general public." *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 557 (S.D.N.Y. 2018). Unlike in the cases on which Plaintiffs rely, Plaintiffs' own complaint contradicts the contention that their marks "have achieved household recognition." Compl. ¶ 245. In Plaintiffs' own words, the "local" in "local newspapers" describes Plaintiffs' niche audience. *Id.* ¶¶ 10, 12; *contra New York City Triathlon v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 315 (S.D.N.Y. 2010) ("local" triathlon had been covered by "national" media). Here, "local" means written for "residents . . . [who] want to know what is happening in their community," including: "Who won the local high school or college game? What's playing at local theaters? Will the weather be nice this weekend? What will the latest city council resolutions . . . mean for my neighborhood?" Compl. ¶ 10. These allegations plead Plaintiffs out of a dilution claim. "The court need not accept allegations [of fame] that are 'contradicted by other matters asserted or relied upon . . . by a plaintiff in drafting the complaint.'" *Davis v. Sedgwick Claims Mgmt. Servs. Inc.*, No. 21-cv-7090, 2023 WL 6150009, at *13 (S.D.N.Y. Aug. 30, 2023)).

### III. CONCLUSION

For the foregoing reasons, OpenAI respectfully requests that the Court grant its motion.

Dated: July 2, 2024

Respectfully submitted,

By: /s/ *Andrew M. Gass*

**LATHAM & WATKINS LLP**
   Andrew M. Gass (*pro hac vice*)
    andrew.gass@lw.com
   Joseph R. Wetzel
    joseph.wetzel@lw.com
   505 Montgomery Street, Suite 2000
   San Francisco, CA 94111
   Telephone: 415.391.0600

   Sarang V. Damle
    sy.damle@lw.com
   Elana Nightingale Dawson (*pro hac vice*)
    elana.nightingaledawson@lw.com
   555 Eleventh Street, NW, Suite 1000
   Washington, D.C. 20004
   Telephone: 202.637.2200

   Allison L. Stillman
    alli.stillman@lw.com
   1271 Avenue of the Americas
   New York, NY 10020
   Telephone: 212.906.1200

By: /s/ *Joseph C. Gratz*

**MORRISON & FOERSTER LLP**
   Joseph C. Gratz (*pro hac vice*)[*]
    jgratz@mofo.com
   Vera Ranieri (*pro hac vice*)
    vranieri@mofo.com
   425 Market Street
   San Francisco, CA 94105
   Telephone: 415.268.7000

   Allyson R. Bennett (*pro hac vice*)
    abennett@mofo.com
   707 Wilshire Boulevard, Suite 6000
   Los Angeles, CA 90017-3543
   Telephone: 213.892.5200

By: /s/ *Paven Malhotra*

**KEKER, VAN NEST & PETERS LLP**
   Robert A. Van Nest (*pro hac vice*)
    rvannest@keker.com
   Paven Malhotra*
    pmalhotra@keker.com
   Michelle S. Ybarra (*pro hac vice*)
    mybarra@keker.com
   Nicholas S. Goldberg (*pro hac vice*)
    ngoldberg@keker.com

>Thomas E. Gorman (*pro hac vice*)
> tgorman@keker.com
>Katie Lynn Joyce (*pro hac vice*)
> kjoyce@keker.com
>R. James Slaughter (*pro hac vice*)
> rslaughter@keker.com
>633 Battery Street
>San Francisco, CA 94111-1809
>Telephone: 415.391.5400
>
>*Attorneys for OpenAI Defendants*

---

[*] All parties whose electronic signatures are included herein have consented to the filing of this document in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.