**MEMO ENDORSED.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Daily News, LP; Chicago Tribune Company, LLC; Orlando Sentinel Communications Company, LLC; Sun-Sentinel Company, LLC; San Jose Mercury-News, LLC; DP Media Network, LLC; ORB Publishing, LLC; and Northwest Publications, LLC, <br><br>          Plaintiffs, <br><br>          v. <br><br><br> MICROSOFT CORPORATION, OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO, LLC, OPENAI GLOBAL, LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC, <br><br>          Defendants. | Civil Action No. 24-3285 <br><br> **RULE 26(f) REPORT AND PROPOSED CASE MANAGEMENT PLAN** |

The parties submit this report of their Rule 26(f) conference and proposed case management plan.

## I.     INTRODUCTION

1.     The parties met and conferred over video as required by Rule 26(f) on June 14, 2024.

2.     The parties' Rule 26(f) report is thus due on June 28, 2024.  *See* Fed. R. Civ. P. 26(f)(2).

## II.     SUMMARY OF CLAIMS AND DEFENSES

3.     Plaintiffs bring claims for direct, vicarious, and contributory copyright infringement under the Copyright Act (17 U.S.C. § 501); violation of the Digital Millennium Copyright Act by removal of copyright management information (17 U.S.C. § 1202); common law unfair competition by misappropriation; trademark dilution (15 U.S.C. § 1125(c)); and dilution and injury to business reputation (N.Y. Gen. Bus. Law § 360-1).

1

4.     Defendants plan to assert several arguments and/or defenses, including but not limited to failure to state a claim, no infringement, fair use, substantial non-infringing uses, *scenes à faire*, 17 U.S.C. § 102(b), 17 U.S.C. § 512 (a)-(d), de minimis copying, preemption, and lack of injury.

A.     **PLAINTIFFS' STATEMENT**

5.     Plaintiffs Daily News, LP; Chicago Tribune Company, LLC; Orlando Sentinel Communications Company, LLC; Sun-Sentinel Company, LLC; San Jose Mercury-News, LLC; DP Media Network, LLC; ORB Publishing, LLC; and Northwest Publications, LLC (collectively "Plaintiffs" or "Publishers") publish digital and print products, including their core news products, The New York Daily News, The Chicago Tribune, The Orlando Sentinel, The Sun-Sentinel, The Mercury News, The Denver Post, The Orange County Register, and The Pioneer Press, respectively.  The Publishers collectively own millions of registered, copyrighted works. The Publishers are local newspapers serving many of the largest metropolitan areas of the country as well as smaller cities, towns and regions — collectively working to narrow the news divide, and to fill in the "news deserts" that have arisen in many states and regions.

6.     The Publishers allege that Defendants unlawfully copied and used the Publishers' copyrighted works ("Publishers Works") to build and operate Defendants' generative artificial intelligence ("GenAI") products, including ChatGPT and Bing Chat (recently rebranded as "Copilot").  Defendants are freeriding on the Publishers' massive investment in their journalism by using it to build substitutive products without permission or payment, which is unlawful.

7.     The Publishers allege that Defendants' unlicensed copying, reproduction, display, and preparation of derivatives of Publishers Works constitute direct, vicarious, and contributory copyright infringement in violation of the Publishers' intellectual property rights.

8.    The Publishers allege that Defendants violated the Digital Millennium Copyright Act by removing the Publishers' copyright management information from Publishers Works published on the Publishers' websites and elsewhere.

9.    The Publishers allege that Defendants committed common law unfair competition by misappropriation by developing and operating GenAI products that directly compete with the Publishers.  These products display and produce outputs that copy and/or closely summarize Publishers Works, thereby diverting traffic away from the Publishers' websites and causing harm to the Publishers, including, but not limited to, by usurping commercial opportunities to earn advertising, subscription, licensing, and affiliate revenues.

10.    The Publishers allege that Defendants committed trademark dilution by tarnishment through their unauthorized use of Daily News, LP; Chicago Tribune Company, LLC; San Jose Mercury-News, LLC; and DP Media Network, LLC marks (collectively "Diluted Trademarks") on inaccurate outputs, also called "hallucinations," from Defendants' GenAI products, and the resulting false attribution to Daily News, LP; Chicago Tribune Company, LLC; San Jose Mercury-News, LLC; and DP Media Network, LLC of misinformation.

11.    The Publishers allege that Defendants' activities caused dilution to the Diluted Trademarks and injured the business reputation of the Daily News, LP; Chicago Tribune Company, LLC; San Jose Mercury-News, LLC; and DP Media Network, LLC, in violation of their rights under New York General Business Law § 360-1.

12.    The Publishers submit that the principal facts and legal issues in dispute include:

      a.    Whether and to what extent Defendants (working together and/or separately) unlawfully copied, reproduced, and/or used Publishers Works to train or otherwise build and operate their GenAI models;

b.    Whether and to what extent Defendants unlawfully copied, reproduced, and/or used Publishers Works in the output of their GenAI models and/or GenAI-powered search results;

c.    Whether Defendants' unauthorized use of Publishers Works was willful;

d.    The degree to which Defendants have profited from their unauthorized use of Publishers Works to create their GenAI models;

e.    To what extent Defendants' unauthorized use of Publishers Works has usurped commercial opportunities for the Publishers;

f.    To what extent Defendants removed copyright management information from Publishers Works;

g.    To what extent Defendants collaborated, coordinated, or otherwise worked with one another to build and operate the allegedly infringing GenAI models and products;

h.    To what extent Defendants' unauthorized use and reproduction of Publishers Works, including in connection with inaccurate outputs, has harmed the Publishers' reputation and/or the strength of its trademarks;

i.    Whether Defendants can establish the elements of fair use despite the commercial purpose and massive scale of Defendants' unauthorized copying of Publishers Works in full, without transformation, for their original purpose, and the harmful impact of Defendants' actions on the market for Publishers Works.

B.    **DEFENDANTS' STATEMENT**

13.    ***OpenAI Defendants***. OpenAI is an artificial intelligence (AI) research and deployment company, with a mission to ensure that artificial general intelligence benefits all of humanity. OpenAI researches, develops, and releases cutting edge AI technology, including ChatGPT and its underlying large language models, as well as tools and best practices for the safety, alignment, and governance of AI.

14.    Developing a large language model like the one underlying ChatGPT and Bing Chat requires teaching the model intelligence and language, such as the ability to predict, reason and solve problems, as well as aligning it to human values and preferences. Teaching a model to understand language and the facts that constitute humans' collective knowledge, for instance, involves showing the model a wide diversity of text, and having it try to predict the word that comes next in each of a huge range of sequences. This requires an enormous amount of computation, as models review, analyze, and learn from trillions of words. Through this extensive process, the model not only learns how words fit together grammatically, but also how words work together to form higher-level ideas, and ultimately how sequences of words form structured thoughts or pose coherent problems. For example, when we think of the word "cloud", we might also think of related words like "sky" and "rain"; when given a sentence like "The secret to happiness is", we might think of various philosophical ideas. In gaining fluency with predicting the next word, the model thereby learns concepts and the building blocks of intelligence.

15.    Plaintiffs' lawsuit alleges that its works were shown to OpenAI's large language models as part of their training; that those models learned from those works; and that this process infringed Plaintiffs' copyrights and trademarks, constitutes unfair competition, and violates the

DMCA as well as N.Y. Gen. Bus. Law § 360-l. Further, Plaintiffs allege that Defendants' "illegal and unauthorized use of the Publishers Works . . . results in substitutive products for which Defendants seek to charge their customers for access, siphoning off existing and potential customers through their unlawful and uncompensated use of the Publishers' own products." ECF No. 1, ¶ 185.

16.     ***Microsoft Corporation***. Microsoft is a Washington Corporation with its principal place of business in Redmond, Washington. Founded in 1975, Microsoft is a technology company whose mission is to empower every person and every organization on the planet to achieve more. Microsoft is creating the platforms and tools, powered by artificial intelligence, that deliver better, faster, and more effective solutions to support small and large business competitiveness, improve educational and health outcomes, grow public-sector efficiency, and empower human ingenuity. Microsoft is committed to making the promise of AI real – and doing it responsibly.

17.     Defendants deny that they have violated any of Plaintiffs' rights. The principal facts in dispute include:

      a.  Whether Plaintiffs' copyrighted works at issue ("Plaintiffs' Works") were actually used to train the large language models used for ChatGPT and Bing Chat.

      b.  Whether and how the alleged inclusion of Plaintiffs' Works in the training data results in copying of those works.

      c.  Whether and to what extent the alleged use of Plaintiffs' Works served a new and different purpose from the original purpose of each of those works.

      d.  Whether and to what extent there exists a licensing market to use Plaintiffs' Works in the manner alleged.

e.  Whether and to what extent any use of Plaintiffs' Works by Defendants or their users affected any market for those works.

f.  Whether and to what extent Defendants' products serve as a substitute for Plaintiffs' Works.

g.  Whether and to what extent Plaintiffs were harmed by the alleged use of Plaintiffs' Works.

h.  Whether and to what extent the alleged use of Plaintiffs' Works serves the public interest.

i.  Whether Defendants Microsoft Corporation ("Microsoft"), OpenAI Inc., OpenAI GP, OpenAI LP, OAI Corporation LLC, OpenAI Holdings LLC, and OpenAI Global LLC have the right and ability to control the alleged activity by Defendants OpenAI LP, OpenAI Global LLC, OpenAI OpCo LLC, and OpenAI LLC.

j.  Whether Defendants Microsoft, OpenAI Inc., OpenAI GP, OpenAI LP, OAI Corporation LLC, OpenAI Holdings LLC, and OpenAI Global LLC derive a direct financial benefit from the alleged inclusion of Plaintiffs' Works in the training data.

k.  Whether Microsoft has contributed to copyright infringement, acted in a way that promoted infringing use, or did anything to induce infringing use by investing in OpenAI and developing a supercomputing system capable of supporting OpenAI's large language models.

l.  Whether Defendants had actual knowledge of the alleged use of their products to create specific outputs that allegedly infringe Plaintiffs' Works.

m.  Whether Defendants' products are capable of substantial non-infringing uses.

n.  Whether Plaintiffs included CMI in Plaintiffs' Works.

o.  Whether that alleged CMI was intentionally removed during the training process with "reasonable grounds to know" that such removal "will induce, enable, facilitate, or conceal an infringement" of copyright.

p.  Whether that alleged CMI was intentionally removed from model outputs with "reasonable grounds to know" that such removal "will induce, enable, facilitate, or conceal an infringement" of copyright.

q.  Whether users of Defendants' products are likely to be confused by model outputs that contain "hallucinations" along with references to the registered trademarks referenced in Paragraphs 170 through 176 of the Complaint.

18.  Defendants summarize the legal issues as follows:

a.  Whether Plaintiffs own valid, enforceable copyrights in the asserted works.

b.  Whether Plaintiffs' copyright registrations are valid and provide a basis for suit under 17 USC § 411(a).

c.  Whether Plaintiffs' claims are barred, in whole or in part, by the statute of limitations or equitable doctrines such as laches, waiver, or estoppel.

d.  Whether Plaintiffs can meet their prima facie burden of establishing that Defendants directly infringed Plaintiffs' Works.

e.  Whether, assuming Plaintiffs can prove Defendants engaged in prima facie acts of infringement, Defendants' alleged use of Plaintiffs' Works to train a large language model is a fair use under 17 U.S.C. § 107.

f.  Whether Plaintiffs are entitled to relief under a vicarious copyright infringement claim.

g.  Whether Plaintiffs entitled to relief under a contributory copyright infringement claim.

h.  Whether Plaintiffs are entitled to relief for violation of Section 1202(b) of the Copyright Act.

i.  Whether Plaintiffs are entitled to relief for unfair competition by misappropriation under common law.

j.  Whether Plaintiffs are entitled to relief for trademark dilution under 15 U.S.C. § 1125(c).

k.  Whether Plaintiffs are entitled to relief for dilution and injury to business reputation under N.Y. Gen. Bus. Law § 360-l.

l.  Whether the Copyright Act preempts Plaintiffs' claim for unfair competition by misappropriation.

m.  Whether, assuming Defendants are found liable on one or more theories, Plaintiffs are legally entitled to the full measure of damages they seek.

## III.  **INITIAL DISCLOSURES**

19.  The parties agree that initial disclosures are due on June 28, 2024, under Rule 26(a)(1)(C).

## IV.  **MOTION PRACTICE**

### A.  **PLAINTIFFS' STATEMENT**

20.  Plaintiffs anticipate filing a motion for summary judgment on certain issues that may narrow the case.

**B.**     **DEFENDANTS' STATEMENT**

21.     Defendants filed partial Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on June 11, 2024. The OpenAI Defendants filed a motion to consolidate this case with the pending related action *New York Times Co. v. Microsoft Corp.*, Case No. 1:23-cv-11195-SHS (S.D.N.Y.) ("Times Action") on June 13, 2024. Microsoft filed a joinder on June 14, 2024. Defendants anticipate filing motions for summary judgment on certain issues that may narrow the case, and further anticipate that both parties may file various discovery motions.

**V.**     **SCOPE OF DISCOVERY**

22.     The parties agree that discovery is governed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and this Court's Individual Practices.

23.     **Plaintiffs** anticipate that discovery will be needed on at least the following subjects:

a.     Defendants' corporate structures;

b.     Training data and the sources of training data, including Publishers' Works, used in any Microsoft and/or OpenAI GenAI model, including but not limited to the training data for GPT-1, GPT-2, GPT-3, GPT-3.5, GPT-3.5 Turbo, GPT-4, GPT-4 Turbo, GPT-4o, MAI-1 and all versions thereof (collectively, the "Models");

c.     The Models, including their training, dataset construction, dataset cleaning, training methods, weighting for training data or similar, fine-tuning, and grounding, along with any source-code, parameters, algorithms, architecture, hardware, or software;

d.      The development and commercialization of the Models;

e.      User requests, traffic, and behavior when interacting with the Models;

f.      Output generated by the Models, including output that repeats or summarizes training material or contains hallucinations or misinformation;

g.      Licensing deals or negotiations, including those involving the use of content for training or operating the Models and Microsoft and OpenAI's GenAI products;

h.      Actual or potential harms caused by the Models, including to content creators;

i.      Business plans, product plans, and financial projections for both Microsoft and OpenAI, including those that pertain to offering news and other content offered by the Publishers;

j.      Use of Publishers content in retrieval augmented generation and search GenAI products;

k.      The presence of copyrighted content in datasets used to train the Models, within the Models themselves, or in output generated by the Models, including such content that belongs to the Publishers;

l.      Microsoft's role in developing and commercializing the Models;

m.      The relationship between Microsoft and OpenAI, including Microsoft's investments in OpenAI, role in licensing deals involving the Models, and control over OpenAI; and

n.      Defendants' knowledge of their infringing conduct, including Defendants' communications about their unlicensed use of copyrighted content in

third-party training sets and/or the Models, and efforts to disguise or otherwise cover up their copying of copyrighted content belonging to the Publishers.

24.     Defendants anticipate that discovery will be needed on at least the following subjects:

a.  Plaintiffs' lack of harm.

b.  Plaintiffs' ownership of and copyright interest in the works that are the subject of their Complaint.

c.  Plaintiffs' works, and where and how they are published.

d.  The licensing and distribution of all Plaintiffs' works that they assert to form any basis for their claims, and all other facts concerning the market for such works.

e.  Any copyright registrations or applications for registration of any of the Plaintiffs' works that they assert to form any basis for their claims.

f.  All use by Plaintiffs of ChatGPT, Bing Copilot (formerly Bing Chat) or any other AI service offered by any Defendant.

g.  Plaintiffs' reporting on OpenAI, ChatGPT, Bing Copilot (formerly Bing Chat) or any other AI service offered by any Defendant.

h.  All efforts by Plaintiffs or anyone acting on their behalf to cause ChatGPT or any other AI service offered by any Defendant to reproduce Plaintiffs' works, including, but not limited to, creating the outputs displayed in the Complaint and in Exhibit J thereto.

i.  The availability of third-party content that is similar to or describes Plaintiffs' Works.

      j.   Third-party content discussing or reporting on the same subject matter as Plaintiffs' works-in-suit.

## VI.   **DISCOVERY ORDERS**

25.    Plaintiffs have provided Defendants with a proposed agreed protective order and a proposed agreed order regarding the production of Electronically Stored Information (ESI) on June 24, 2024.

26.    If the parties are unable to agree to one or more provisions of such orders, the parties anticipate submitting competing proposals to the Court.

### A.  **COORDINATION OF RELATED ACTIONS**

27.    **Plaintiffs** anticipate that some depositions of Defendants' witnesses and third-parties in this action should be coordinated with those in the Times Action and the Consolidated Class Actions pursuant to a proposed mutually agreed deposition coordination protocol.

28.    If the parties are unable to agree to one or more provisions of such a protocol, the parties anticipate submitting competing proposals to the Court.

29.    **Defendants** propose consolidating this case with the Times Action for purposes of pretrial proceedings and discovery, such that all depositions are coordinated with those in the Times Action and that OpenAI and Microsoft witnesses are only deposed once. *See* Mot. to Consolidate (ECF No. 88).

### B.  **DISCOVERY LIMITS**

30.    **Plaintiffs** currently anticipate that modifications of the defaults established by the Federal Rules of Civil Procedure will be necessary with respect to the depositions of Defendants' witnesses and third-parties.

31.    **Defendants** note that the parties are discussing proposals for coordinating and/or consolidating depositions across the Daily News and New York Times cases. Pending the outcome of these discussions, a modification of the defaults established by the Federal Rules may be appropriate.

32.    If circumstances change, the parties agree to work together in good faith to accommodate reasonable requests to modify these defaults to minimize the need for this Court's intervention.

## VII.    DISCOVERY DISPUTES

33.    The parties agree that discovery disputes are governed by Rule 2(G) of this Court's Individual Practices, as well as any applicable provisions of such orders regarding confidentiality, privilege, and ESI as the Court may enter.

## VIII.    CASE SCHEDULE

34.    The parties agree that discovery opened when they held their Rule 26(f) conference on June 14, 2024. The parties disagree about the appropriate scheduling and sequencing of the case. The parties' competing scheduling proposals are as follows:

| Case Event | Plaintiffs' Proposed Date | Defendants' Proposed Date |
|---|---|---|
| Discovery opens | June 14, 2024 (Date of Rule 26 conference) | June 14, 2024 (date of Rule 26 Conference) |
| Last day to amend pleadings and join other parties | October 30, 2024 | November 20, 2024 |
| Substantial production of documents | October 18, 2024 | January 13, 2025 |
| Close of fact discovery | December 18, 2024 | March 17, 2025 |
| Opening expert reports | January 20, 2024 | April 18, 2025 |
| Responsive expert reports | February 20, 2024 | May 19, 2025 |
| Close of expert discovery | March 10, 2024 | June 20, 2025 |
| Deadline to file motions for summary judgment | April 7, 2025 | July 21, 2025 |

| | | |
|---|---|---|
| *Deadline to oppose motions for summary judgment* | May 7, 2025 | August 18, 2025 |
| *Deadline to reply in support of motions for summary judgment* | May 28, 2025 | September 8, 2025 |
| *Hearing on motions for summary judgment* | Court's discretion | Court's discretion |
| *Deadline to submit joint pretrial order pursuant to Rule 3(A) of the Court's Individual Practices* | Court's discretion | Court's discretion |
| *Deadline to submit documents required by Rule 3(B) of the Court's Individual Practice* | Court's discretion | Court's discretion |
| *Final pretrial conference* | Court's discretion | Court's discretion |
| *Trial* | Court's discretion | Court's discretion |

### A.     <u>PLAINTIFFS' PROPOSED SCHEDULE</u>

*Interim fact discovery deadline 12/20/2024 /sotw*

35.     Plaintiffs propose that this case follow the same schedule set forth in the related case, *The New York Times Co. v. Microsoft Corp. et al* (No. 1:23-cv-11195), and stipulated to by Defendants in *Authors Guild et al. v. OpenAI, Inc. et al.* (No. 1:23-cv-08292), *Alter et al. v. OpenAI, Inc. et al.* (No. 1:23-cv-10211), and *Basbanes et al. v. OpenAI, Inc. et al.* (No. 1:23-cv-00084) (collectively the "Consolidated Class Actions"). In response to OpenAI's motion to consolidate this case with *New York Times Co. v. Microsoft Corp.*, Case No. 1:23-cv-11195-SHS (S.D.N.Y.), on June 13, 2024, and Microsoft's joinder of that motion on June 14, 2024, requesting "at least six months to complete fact discovery" (Dkt. 88 at 11), Plaintiffs and The New York Times have proposed a three-month extension to that schedule, thereby affording the parties six months for fact discovery.

36.     Plaintiffs assert the same claims against the same Defendants in the Times Action, differing only in the additional trademark dilatation claim under New York law. Accordingly,

Plaintiffs believe that the legal theories asserted in the present action implicate a similar scope of discovery as compared to the legal theories asserted in the Times Action and the Consolidated Class Actions.

37.     The GPT models at issue in this action are the same as those at issue in the Times Action and the Consolidated Class Actions, and the training data and output of such models is subject to discovery in those suits.  Likewise, the additional assertions in the present action do not put additional products or technology at issue.

38.     The legal and factual issues relating to copyright infringement and a fair use analysis substantially overlap in this action as compared to the Times Action and the Consolidated Class Actions.  The training and outputs of the GPT models, as well as the commercialization of products based on the models, will be subject of discovery for at least the purpose of determining potential for those models as substitute works.

39.     Given the substantial overlap between the legal and factual issues between the present action, the Times Action, and the Consolidated Class Actions, Plaintiffs believe that a consolidated discovery schedule will avoid duplicative efforts, expenses, and burdens on the Court and the parties.

**B.     OPENAI'S PROPOSED SCHEDULE**

40.     Plaintiffs' case is sprawling. ***Eight regional newspapers***, spread across the country, are suing the OpenAI Defendants in this matter. They currently estimate that they will assert ***8.4 million works***. The final number may be higher; Plaintiffs' investigation is still ongoing. Plaintiffs are still not ready to provide an identification of which specific news articles are at issue, and they have provided no specific date by which they will be ready to provide such information.

41.     Given the breathtaking but still unsettled scope of this case, sufficient time is needed to allow Defendants to prepare their defense. Defendants propose nine months to complete fact discovery. Although this Court often affords parties six months to conduct fact discovery, a modest increase is appropriate here given the number of Plaintiffs and number of works involved. That Plaintiffs are unable to provide the precise number of works at issue, nor identify the articles themselves, speaks volumes about the complexity of this case. It also undermines Plaintiffs' request for such an expedited discovery schedule.

42.     As explained in Defendants' Motion to Consolidate (ECF No. 88), Defendants agree with Plaintiffs' above representation that "the legal theories asserted in the present action implicate a similar scope of discovery as compared to the legal theories asserted in the Times Action." For that reason, Defendants seek to consolidate the New York Times and the Daily News litigation. But given that these two matters apparently involve *over 18 million asserted works* (over 8.4 million in the Daily News case and over 10 million in the New York Times case), these cases require sufficient time to complete discovery.

43.     The Court should adopt the schedule outlined by the Defendants above and place the New York Times case on the same schedule.

C.     <u>**MICROSOFT'S PROPOSED SCHEDULE**</u>

44.     Microsoft agrees with OpenAI that, given the scope of Plaintiffs' claims in this case and the number of works at issue (at least 8.4 million), it is entirely unworkable for Plaintiffs to seek to adopt the expedited schedule that was set in The New York Times matter (No. 1:23-cv-11195-SHS)—even if that schedule were to be extended by three months.

45.     Microsoft has joined in OpenAI's Motion to Consolidate The New York Times case with this case (ECF Nos. 87, 94), and the parties to this Rule 26(f) Report all appear to agree that

this matter should be consolidated with the New York Times matter given the overlapping issues in the two cases. Indeed, there are certainly clear benefits for the Plaintiffs in this Action to a consolidation with The New York Times matter, as they can easily take advantage of the discovery that has already occurred in that case. However, the same is not true for the Defendants.

46.     As explained in detail in Microsoft's portion of the Rule 26(f) Report in The New York Times matter, from the outset having The New York Times case set on the same schedule as the Consolidated Class Actions was always a stretch given the significantly broader scope of the claims at issue there. *See* No. 1:23-cv-11195-SHS, ECF No. 72. And for the reasons articulated in Microsoft's more recent briefing, it has become abundantly clear that The New York Times case, by itself, simply cannot be completed on the same schedule as the Consolidated Class Actions. *See* Microsoft's Conditional Opposition to The New York Times Company's Motion for Leave to Amend (1:23-cv-011195-SHS, ECF No. 129); *see also* Microsoft's Joinder Brief in Support of the OpenAI Defendants' Motion to Consolidate (ECF No. 94).

47.     For the Daily News Plaintiffs to now suggest adding an additional eight (8) plaintiffs and over eight (8) million works to that already complex and challenging schedule is nonsensical. The extensive discovery that will be needed from all parties in order to allow the Defendants to fully and fairly defend themselves against these claims cannot be done on the same schedule that different parties agreed to for a much simpler case with far fewer legal and factual issues, and significantly reduced complexity.

48.     To be clear, and as explained in prior briefing, while the Consolidated Class Actions are exclusively focused on training the LLMs at issue—and the concordant copyrighted works that allegedly served as *inputs*—the Daily News case (like The New York Times case) concerns those same issues ***as well as*** a newly accused technology (generative search) and the purported

appearance of Plaintiffs' works in generative search *outputs*.  In addition, this case and The New York Times case uniquely address the relationship between Microsoft's AI products and generative search engine technology—an issue that is not touched on in the Consolidated Class Actions and presumably for which Plaintiffs will seek additional discovery.  Put simply, Plaintiffs' additional allegations inherently translate into broader, and potentially more extensive, fact and expert discovery.

49.    The Daily News Plaintiffs, while seeking an expedited discovery schedule for their matter, have done nothing to demonstrate that this case has been in any way simplified for the parties involved here by the existence of The New York Times matter.  Given the complexities addressed above, Microsoft agrees with OAI that the Plaintiffs' plan is not feasible and requests that the Defendants' proposed schedule should be adopted as matter of fundamental fairness.

Dated: June 28, 2024

*/s/ Steven Lieberman*
Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Robert Parker (*pro hac vice*)
Jenny L. Colgate (*pro hac vice*)
Kristen J. Logan (*pro hac vice*)
Bryan B. Thompson (6004147)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783-6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
rparker@rothwellfigg.com
jcolgate@rothwellfigg.com
klogan@rothwellfigg.com
bthompson@rothwellfigg.com

Jeffrey A. Lindenbaum (JL1971)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York 10562
Telephone: (202) 783-6040
Facsimile: (202) 783-6031
jlindenbaum@rothwellfigg.com

*Attorneys for Plaintiffs*

KEKER, VAN NEST & PETERS LLP

Dated: June 28, 2024

By: */s/ Paven Malhotra*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
ROBERT A. VAN NEST (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
PAVEN MALHOTRA - # 4409397
MICHELLE S. YBARRA (*pro hac vice*)
NICHOLAS S. GOLDBERG (*pro hac vice*)
THOMAS E. GORMAN (*pro hac vice*)
KATIE LYNN JOYCE (*pro hac vice*)
SARAH SALOMON (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile:  415 397 7188
rvannest@keker.com
rslaughter@keker.com
pmalhotra@keker.com
mybarra@keker.com
ngoldberg@keker.com
tgorman@keker.com
kjoyce@keker.com

*Attorneys for Defendants OPENAI, INC.,
OPENAI LP, OPENAI GP, LLC, OPENAI,
LLC, OPENAI OPCO LLC, OPENAI
GLOBAL LLC, OAI CORPORATION, LLC,
OPENAI HOLDINGS, LLC*

Dated:  June 28, 2024                         LATHAM & WATKINS LLP


By:  */s/ Elana Nightingale Dawson*
     Joseph R. Wetzel
      *joseph.wetzel@lw.com*
     Andrew M. Gass (*pro hac vice*)
      *andrew.gass@lw.com*
     505 Montgomery Street, Suite 2000
     San Francisco, CA 94111
     Telephone: 415.391.0600

     Sarang V. Damle
      *sy.damle@lw.com*
     Elana Nightingale Dawson
     *Elana.nightingaledawson@lw.com*
     555 Eleventh Street, NW, Suite 1000
     Washington, D.C. 20004
     Telephone: 202.637.2200

     Allison L. Stillman
      *alli.stillman@lw.com*
     1271 Avenue of the Americas
     New York, NY 10020
     Telephone: 212.751.4864

     *Attorneys for OpenAI Defendants*

Dated:  June 28, 2024                              MORRISON & FOERSTER LLP


By:  */s/ Allyson Bennett*
     Joseph C. Gratz (*pro hac vice*)
     j*gratz@mofo.com*
     Vera Ranieri (*pro hac vice*)
     *vranieri@mofo.com*
     425 Market Street
     San Francisco, CA 94105-2482
     Telephone: 415.268.7000

     Allyson R. Bennett (*pro hac vice*)
     *abennett@mofo.com*
     Rose S. Lee (*pro hac vice*)
     *rose.lee@mofo.com*
     707 Wilshire Boulevard, Suite 6000
     Los Angeles, California 90017-3543
     Telephone: 213.892.5200

     Eric K. Nikolaides
     *enikolaides@mofo.com*
     250 West 55th Street
     New York, NY 10019-9601
     Telephone: 212.468.8000

     *Attorneys for OpenAI Defendants*

Dated:  June 28, 2024                    ORRICK, HERRINGTON & SUTCLIFFE LLP

                                         */s/ Annette Hurst*
                                         Annette L. Hurst (admitted *pro hac vice*)
                                         The Orrick Building, 405 Howard Street
                                         San Francisco, CA 94105-2669
                                         Telephone: (415) 773-5700
                                         Facsimile: (415) 773-5759
                                         Email: ahurst@orrick.com

                                         Christopher Cariello
                                         51 West 52nd Street
                                         New York: NY 10019
                                         Telephone: (212) 506-3778
                                         Facsimile: (212) 506-5151
                                         Email: ccariello@orrick.com
                                                 mrshapiro@orrick.com

                                         Sheryl Koval Garko (admitted *pro hac vice*)
                                         Laura Brooks Najemy (admitted *pro hac vice*)
                                         222 Berkeley Street, Suite 2000
                                         Boston, MA 02116
                                         Telephone: (617) 880-1800
                                         Facsimile: (617) 8801-1801
                                         Email: sgarko@orrick.com
                                                 lnajemy@orrick.com

                                         *Attorneys for Defendant Microsoft Corporation*

Dated:  June 28, 2024                    FAEGRE DRINKER BIDDLE & REATH LLP

                                         */s/ Jared Briant*
                                         Jared B. Briant (admitted *pro hac vice*)
                                         1144 Fifteenth Street, Suite 3400
                                         Denver, CO 80202
**SO ORDERED.**                          Telephone: (303) 607-3500
                                         Facsimile: (303) 607-3600
                                         Email: jared.briant@faegredrinker.com

                                         Jeffrey S. Jacobson
                                         1177 Avenue of the Americas, 41st Floor
                                         New York, New York 10036
Ona T. Wang                              Telephone: (212) 248-3140
U.S.M.J.                                 Email: jeffrey.jacobson@faegredrinker.com
9/13/2024
                                         *Attorneys for Defendant Microsoft Corporation*