UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUTHORS GUILD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> OPEN AI INC., et al., <br><br> Defendants. | **Consolidated:** <br> Case No.  1:23-cv-08292-SHS-OTW <br> Case No.  1:23-cv-10211-SHS-OTW |
| THE NEW YORK TIMES COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, et al., <br><br> Defendants. | **Consolidated:** <br> Case No.  1:23-cv-11195-SHS-OTW <br> Case No.  1:24-cv-03285-SHS-OTW <br> Case No.  1:24-cv-04872-SHS-OTW |

**DEFENDANT MICROSOFT'S REPLY BRIEF IN SUPPORT OF ITS RULE 72(A) OBJECTIONS TO ORDERS REGARDING SCOPE OF DISCOVERY CONCERNING FAIR USE AND SUBSTANTIAL NONINFRINGING USES (NYT ECF 351, 354, 355 & AG ECF 289)**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I.   THE ORDER ERRONEOUSLY REFUSES DISCOVERY INTO ECONOMIC
     EFFECTS RELEVANT TO A KEY FOURTH FACTOR ISSUE: SUBSTITUTION. ........... 1

II.  THE ORDER IMPROPERLY RESTRICTS THE PRODUCTION OF EVIDENCE
     RELATED TO THE DEVELOPMENT AND USE OF GENERATIVE AI BY
     PLAINTIFFS. ...................................................................................................................... 6

     A. The Court Should Ignore New Material Submitted by The Times. ..................................... 6

     B. The Order Fails To Address The Application Of *Google v. Oracle* To The Relevance
        Of Evidence Of The Times's Training Of Its Own Model. ................................................ 7

     C. The Order Improperly Excludes Relevant Uses For The First Factor. ............................... 8

     D. The Orders Fail To Address Microsoft's Substantial Noninfringing Uses Defense
        (NYT ECF 354/355 & AG ECF 289) ............................................................................... 10

CONCLUSION ........................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Geophysical Union v. Texaco Inc.*,
   60 F.3d 913 (2d Cir. 1994)..................................................................................................4

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006)................................................................................................2

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns., Inc.*,
   881 F.3d 293 (4th Cir. 2018) ............................................................................................10

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).........................................................................................................2, 9

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
   536 F.3d 121 (2d. Cir. 2008).......................................................................................10, 11

*FTC v. Vyera Pharms., LLC*,
   No. 20-cv-706, 2021 U.S. Dist. LEXIS 219493 (S.D.N.Y. Nov. 12, 2021)..............................3

*Google LLC v. Oracle Am., Inc.*,
   593 U.S. 1 (2021).......................................................................................................1, 7, 8

*Grp. Health Plan, Inc. v. Philip Morris USA, Inc.*,
   344 F.3d 753 (8th Cir. 2003) ..............................................................................................3

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ..........................................................................................11

*Matthew Bender & Co. v. W. Publ. Co.*,
   158 F.3d 693 (2d. Cir. 1998)............................................................................................10

*MGM Studios, Inc. v. Grokster, LTD.*,
   545 U.S. 913 (2005)..........................................................................................................11

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   338 F.R.D. 527 (S.D.N.Y. 2021) .........................................................................................3

*Rivera v. Hudson Valley Hosp. Grp., Inc.*,
   No. 17-cv-5636, 2019 U.S. Dist. LEXIS 143086 (S.D.N.Y. Aug. 22, 2019)..........................6

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984)..........................................................................................................11

*Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
    924 F. Supp. 2d 508 (S.D.N.Y. 2013)..................................................................................6

**Statutes**

17 U.S.C. § 107.............................................................................................................................10

Fed. R. Civ. P. 72............................................................................................................................6

## INTRODUCTION

Microsoft filed its Objection because The Times refuses to share key evidence that is solely in its possession and that presumably underpins certain of its own allegations, namely: (1) The Times's analyses of its own economic performance, and (2) The Times's efforts to develop and use LLMs.  Similarly, the Class Plaintiffs have refused to provide evidence in their possession about their use of ChatGPT.  These categories of materials are undeniably appropriate areas for discovery; more importantly, this evidence will be critical to Microsoft's ability to present a full substantive defense to Plaintiffs' lawsuits seeking extraordinary economic and injunctive relief, just as it was in the most recent seminal fair use case in a technological context, *Google v. Oracle*.  But this is not the time to litigate the merits—that time will come down the road.  Now is the time for *all* parties, not just defendants, to share evidence relevant to the claims and defenses at issue—including Microsoft's fair use and substantial noninfringing uses defenses.  The Court should reject Plaintiffs' efforts to conceal this important evidence and sustain Microsoft's Objections to NYT ECF 344, 351, 354, 355 and AG ECF 289.

## ARGUMENT

**I.     THE ORDER ERRONEOUSLY REFUSES DISCOVERY INTO ECONOMIC EFFECTS RELEVANT TO A KEY FOURTH FACTOR ISSUE: SUBSTITUTION.**

As set forth in Microsoft's opening brief, the question of substitution under the fourth fair use factor requires an examination of both the *nature* of any claimed harm (whether it is substitutional or some other kind of suppression) and the *source* of that harm (whether defendant or someone else caused it).  NYT ECF 369 ("MSFT Obj.") at 11–14.  The Times's Opposition underscores how it led Judge Wang astray to erroneously restrict the scope of discovery, as it again puts forth the demonstrably incorrect view that only a defendant's conduct can matter

when assessing fourth-factor substitution. NYT ECF 439 ("NYT MSFT Opp.") at 10–11.[1]

The Times asserts that generative search is causing it to lose readers—an assertion presumably based on The Times's *own* financials and analyses of back-end data on, *e.g.*, web-traffic metrics from various sources, the very evidence The Times now selectively refuses to produce. Assuming that loss of readers is a type of harm relevant to the fourth factor fair use analysis, properly assessing it requires accounting for all factors that might be causing such loss—not just Defendants' actions. That cannot be done by looking only at surveys that include generative AI as a reason for subscription cancellation and ignoring surveys that look at other reasons, or focusing solely on traffic referrals coming from Microsoft as opposed to other parties. Rather, one must look at the overall environment in which The Times operates and the economic and technological factors in that environment, including factors beyond just the Defendants' actions (and generative AI tools), which may be causing such loss. Indeed, established case law requires the Court to consider the broader environment and the potential effects on the works when evaluating Microsoft's claim of fair use. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (fourth factor must take account of "whether unrestricted and widespread conduct of the sort engaged in" "would result in a substantially adverse impact on the potential market for the original.") (internal citation omitted); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006) (fair use must consider effect on the work "if the challenged use becomes widespread").

For this reason, Microsoft requested discovery into, *e.g.*, The Times's periodic financial reports, budgetary and planning projections, and its own analyses of the reasons for any

---

[1] The Times filed its initial Opposition brief on January 17, 2025 (NYT ECF 432) and re-filed on January 23, 2025 to correct an errant docket description. The cites herein are to the re-filed version: NYT ECF 439.

readership losses. MSFT Obj. at 6–7. Microsoft also sought The Times's surveys eliciting the reasons for readers cancelling their subscriptions, reports discussing the reasons for changes to web traffic, and analyses of advertising revenue fluctuations attributable to all sources. *See* NYT ECF 315-1 at 8–10, 14–15, 20–21 (RFP Nos. 75-77, 80, 89, and 101). This evidence is exclusively in the hands of The Times, which, for its part, does not deny such evidence exists, but instead simply refuses to produce it.

By asserting that Microsoft Copilot is causing it harm, The Times is hypothesizing that but-for the effect of Copilot, The Times would have maintained or improved its position. One of the few meaningful ways to test this assertion is to obtain data to create models of this counterfactual universe that assess the but-for world. But-for counterfactuals are standard tools in making and countering claims of economic harm. *See, e.g.*, *FTC v. Vyera Pharms.*, LLC, No. 20-cv-706, 2021 U.S. Dist. LEXIS 219493, at *14 (S.D.N.Y. Nov. 12, 2021) (permitting construction of model using counterfactual scenarios to demonstrate excess profits associated with defendants' purportedly exclusionary contracts); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 555–56 (S.D.N.Y. 2021) (permitting expert counterfactual testimony on lack of reverse payments such to permit entry of generic drug onto the market).

The Times wishes to assert harm and then preclude inquiry into all other potential causes of that harm. But counterfactual analyses rely upon getting evidence from the parties about the state of the market in which they are participating. *See, e.g.*, *Grp. Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753 (8th Cir. 2003) ("Although courts cast their assessment of how much speculation is permissible in various verbal forms, their conclusions in cases involving counterfactual estimations essentially come down to this: A certain amount of speculation is necessary, an even greater amount is permissible (and goes to the weight of the testimony), but too much is fatal to admission.").

3

The Times's refusal to produce certain financial reports, such as Board presentations, analyzing its economic performance and its limitation of customer surveys to only those "surveys . . . that allow a reader to point to AI products as a reason for cancellation," NYT MSFT Opp. at 12, is thus plainly improper in its assessment of relevance. All the reasons for diverting traffic or cancelling subscriptions are potential alternative explanations for readership decline. Such discovery shows a lack of substitutional harm in "traditional markets." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994). Factors in the world at large may be persuasive alternative explanations for any claimed readership declines, and neither reports of economic effects nor surveys limited to AI as a specific explanation are adequate to assess those factors.

The Times further argues incorrectly that "Defendants' request would capture a vast amount of trivial daily communications between Times employees relating to *any* decrease in revenue or web traffic, *regardless* of the scale, *cause*, *or relation to Defendants' products*[,]" (NYT MSFT Opp. at 11 (emphasis added)). Indeed, this hyperbole further supports Microsoft's objection. Microsoft has not asked for every "trivial daily communication"; its discovery focuses on key internal economic reports and analyses as well as reader surveys precisely because they are likely to show that any asserted declines *are not related to Defendants' products*. A lack of relation to Defendants' products is precisely the point.

To be clear, Microsoft made targeted asks of The Times for, not "all" documents and communications, but rather "[d]ocuments *sufficient to show*," *e.g.*, The Times's "market performance" "before and after release of Defendants' Generative AI Product(s) and Service(s)."

4

NYT ECF 315-2, at 8–10 (RFP Nos. 8–9).[2] And, during the conferral process, Microsoft refined those requests further, asking specifically for: "The Times's periodic financial reports, budgets, strategic and other business plans, financial projections and metrics, and periodic management reports including Board presentations regarding the financial health of The Times showing effects on revenue streams over time." MSFT Obj. at 6 (citing NYT ECF 315-2, at 8–10 (RFP Nos. 8–9)).

The Times's position, as applied by NYT ECF 344, would also improperly exclude any discussion of the traffic from Google or the reasons for changes in such traffic. Google enjoys the lion's share of the search market and has implemented generative AI technologies into its namesake search feature. The Times's refusal to produce evidence discussing what is happening with other players, including the dominant player in the search market, ignores reality. If, for example, The Times's internal documents analyzing its traffic do not report any drop-off in search referrals from Google despite Google's adoption of generative AI-based search, or if The Times's internal documents attribute any drop-offs in search referrals from Google to other causes, then obviously such documents would be highly relevant to assessing its claim that any decrease in Microsoft Bing search referrals was a result of the next-generation search engine deployed in Copilot. Such evidence about the effects of the dominant search player would undermine any assertion that declines in readership are from substitution effects attributable to generative AI.

The Times is demonstrably wrong about the scope of Microsoft's defenses, and in its zeal to limit them, The Times is making premature arguments about what does or does not prove

---

[2] Microsoft's market effects Requests to Authors Guild mirrors those propounded on The Times. For the same reasons presented herein, Microsoft should be permitted discovery into those core fourth factor topics from both Plaintiffs.

harm from substitution. Discovering that very thing is the entire point of Microsoft's inquiry. Microsoft's Objection to NYT ECF 351 and AG ECF 289 should be sustained and the requested economic and financial evidence ordered to be produced.

## II.  THE ORDER IMPROPERLY RESTRICTS THE PRODUCTION OF EVIDENCE RELATED TO THE DEVELOPMENT AND USE OF GENERATIVE AI BY PLAINTIFFS.

### A.  The Court Should Ignore New Material Submitted by The Times.

The Times's Opposition to OpenAI's Objection—which was incorporated by reference into its Opposition to Microsoft's Rule 72(a) Objection (*see* NYT MSFT Opp. at 16)—introduces a brand-new argument that discovery into The Times's development and use of LLMs would be futile because it never tried to do so, according to an affidavit by its in-house litigation counsel. NYT ECF 429-2 (Aff. of Karen Chesley) ("Chesley Affidavit"). There are multiple good reasons for the Court to ignore this affidavit.

*First*, this Court must consider Microsoft's Rule 72 objection in light of the record before the Magistrate Judge. *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) ("Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge."); *Rivera v. Hudson Valley Hosp. Grp., Inc.*, No. 17-cv-5636, 2019 U.S. Dist. LEXIS 143086, at *25 (S.D.N.Y. Aug. 22, 2019) ("a judge cannot entertain new evidence on a non-dispositive Rule 72(a) motion."). The Chesley Affidavit constitutes improper supplemental evidence that was not part of the record below.

*Second*, coming from a lawyer and not a technologist, the Chesley Affidavit is inadmissible hearsay. Ms. Chesley does not claim to be involved in The Times's development and use of new technologies. She has no foundation of personal or even corporate supervisory knowledge to assert that nobody at The Times tried to train an LLM. In her role as a litigation

6

counsel, she may be able to approve The Times's discovery responses, but not to substitute herself for admissible evidence.

*Finally*, if The Times had in fact indicated that it has no documents responsive to Microsoft's discovery requests in its responses, which The Times did not do (*see* NYT ECF 321-2 at 20), this Objection (or the motion below) would have been unnecessary. Indeed, we know that such documents *do* exist, as evidenced by documents from The Times's Principal Engineer Jeff Sisson discussing an "internal ChatGPT equivalent that's been built." NYT ECF 320-1. Ms. Chesley's Affidavit does not say whether she spoke with Mr. Sisson, or explain why he wrote that The Times had built an LLM.

In sum, the Court should disregard the affidavit in its entirety.

### B. The Order Fails To Address The Application Of *Google v. Oracle* To The Relevance Of Evidence Of The Times's Training Of Its Own Model.

There is no better example of how The Times's premature focus on ultimate questions of admissibility induced Judge Wang's error than its treatment of the Supreme Court's opinion in *Google v. Oracle*. In that opinion, the Court examined the importance of plaintiff's failed efforts to develop its own mobile phone and dedicated nearly an entire page to the significance of this evidence to the fourth factor, and how a jury could have found that the copyright holder's failure to develop a new market outweighed other evidence of substitutional harm even in traditional licensing markets. *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 36 (2021). The Times's response? That's merely "*dicta*." NYT MSFT Opp. at 13-14.

We don't need to belabor whether something is dicta in a Supreme Court opinion to see why The Times is wrong. Microsoft is seeking evidence necessary to prove exactly the same point Google made in defending against Oracle's case at trial. Just as Microsoft seeks to show that The Times tried to develop its own LLM and its failure to do so outweighs even harm in a

7

traditional market, the Court in *Google v. Oracle* used that failure to sustain the jury verdict. This is precisely why the Supreme Court discussed it extensively as a key element of the disputed evidence on the fourth factor (making The Times's assertion that it was *dicta* absurd). *See Google LLC v. Oracle Am., Inc.*, 593 U.S. at 36 (discussing the fact that Sun (Oracle's predecessor as the copyright holder) made "many efforts to move into the mobile phone market" that were ultimately "unsuccessful."). Indeed, The Times concedes that this was "evidence the jury heard" in that case. NYT MSFT Opp. at 13. But The Times is going to great lengths to hide the evidence of its internal activity regarding LLMs from this Court and from a jury. The Gray Lady doth protest too much.

As noted above, public and internally produced documents show that The Times has certainly "tried" to develop its own generative AI tools. The Times could also have failed because the technology was too hard, because it lacked enough data for pre-training, or even because it only trained an LLM on The Times' own content. *See* MSFT Obj. at 18–19. Any of these circumstances help to prove both that the technology is highly transformative and that The Times is unlikely to be harmed by use of its content for training LLMs. Just as evidence that Oracle "tried and failed" to enter the market was directly relevant to the Supreme Court's fourth factor fair use inquiry—namely that a failed attempt to develop its own generative AI tools would weigh against any supposed harm to the copyright holder, *id.*, such evidence is relevant here, too.

C. **The Order Improperly Excludes Relevant Uses For The First Factor.**

The Opposition mischaracterizes Microsoft's first factor discovery request for evidence of The Times's generative AI usage as a referendum on "generative AI generally." NYT MSFT Opp. at 16. Microsoft's request is specific: it seeks a single survey conducted by The Times (and the responses) about how The Times's employees used generative AI tools. The Times's

8


documents reveal that the survey exists, and surely the results would include any uses of the tools developed by Defendants. *See* ECF 321-2, at 24–25 (RFP No. 108) ("A complete copy of the "[G]oogle [F]orm" concerning "Generative AI tools like Chat GPT" referenced in Your Bates-stamped document NYT_00115513 and all survey results from this document."); MSFT Obj. at 8. Indeed, The Times's Opposition confirms it is making use of this revolutionary technology to, for instance, "aid Times reporting or its presentation of content." (NYT ECF 429 ("NYT OAI Opp.") at 1; *see also id.* at 5 ("The Times's AI Initiatives program was developed to consider how The Times might leverage generative AI and other forms of machine learning for the benefit of The Times's journalists and readers"). Such uses are directly relevant to the pro-copyright nature of the transformative uses of generative AI. The Times is disputing whether generative AI is a transformative use of the training data used to develop LLMs, necessitating this discovery.

Evidence of how people are using these tools—including the Plaintiffs themselves—will help to demonstrate that the character and purpose of the use of the works is new and different, and far beyond what could be accomplished with just the underlying works. *See* MSFT Obj. at 20, 23. This evidence is important for Microsoft to establish the pro-copyright benefits of this technology under factor one to an entity whose "entire business relates to 'copyright.'" NYT OAI Opp. at 1–2. It demonstrates the same principle as the Author Plaintiffs' prompting of ChatGPT to facilitate their drafting and research: that these tools have unlimited potential as "transformative" activities that "further[]" "the goal of copyright, to promote science and the arts" *Campbell*, 510 U.S. at 579. The Orders limiting Microsoft's discovery into this area are contrary to the law.

**D.     The Orders Fail To Address Microsoft's Substantial Noninfringing Uses Defense (NYT ECF 354/355 & AG ECF 289)**

Similarly, the use evidence is relevant to Microsoft's substantial noninfringing uses defense, which was not even mentioned in NYT ECF 344 or the follow-on orders. Microsoft asserts substantial noninfringing uses as a defense to both contributory infringement counts pled against it by The Times (Counts III and IV) and Class Plaintiffs' singular allegation (Count III). The Class Authors and News Plaintiffs' uses of LLMs are highly relevant to this inquiry because noninfringing uses of the technology, such as for research and scholarship, are by definition non-exploitive of copyright interests. *See* 17 U.S.C. § 107; *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 133 (2d. Cir. 2008) ("[A]sking whether copying copyrighted material is only 'incidental' to a given technology is akin to asking whether that technology has 'commercially significant noninfringing uses,' another inquiry the *Sony* Court found relevant to whether imposing contributory liability was just."); *see also Matthew Bender & Co. v. W. Publ. Co.*, 158 F.3d 693, 706–07 (2d. Cir. 1998).

Again, The Times's response to Microsoft's Objection about substantial noninfringing use evidence is one properly made (if at all) at summary judgment, not in discovery briefing. In effect, The Times is seeking a dispositive ruling to eliminate an affirmative defense, arguing that the defense is unavailable where the challenged product is delivered as a service rather than as a standalone device. NYT MSFT Opp. at 18. The effort to seek a dispositive ruling as a matter of discovery relevance is wholly inappropriate. The argument is also simply wrong.

No appellate court has precluded application of the substantial noninfringing uses defense on the ground that the challenged use was a service rather than a standalone device. This argument ignores many appellate precedents finding relevant the evidence of noninfringing uses even where service providers were involved. *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns.*,

10

*Inc.*, 881 F.3d 293, 308 (4th Cir. 2018) ("These principles apply equally in cases, like this one, that involve subscription services or rentals rather than one-time sales."); *cf. MGM Studios, Inc. v. Grokster, LTD.*, 545 U.S. 913 (2005) (concurring opinions differing on the degree of substantiality needed for the defense); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 437 (1984) ("the label 'contributory infringement' has been applied in a number of lower court copyright cases involving an ongoing relationship between the direct infringer and the contributory infringer at the time the infringing conduct occurred."); *Cartoon Network*, 536 F.3d at 132–33 ("[i]n [*Sony*] the lack of an 'ongoing relationship' between Sony and its VCR customers supported" but was not itself singularly determinative of "the Court's conclusion that it should not impose contributory liability on Sony for any infringing copying done by Sony VCR owners."); *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072–73 (9th Cir. 2013) (similar).

The Times cannot litigate the merits of the substantial noninfringing uses defense in a discovery motion. A dispute on the merits of a legal issue, such as an affirmative defense, is not a basis to preclude discovery into the factual foundation necessary for the Court to assess the applicability of the parties' respective legal arguments. The Times is improperly trying to turn its disputed legal contention about the scope of the defense into an end run around full summary judgment briefing on the application of that legal contention—the degree to which LLMs are used for entirely proper and pro-copyright purposes (and thereby are noninfringing). Who better to provide such evidence than organizations and individuals whose activity revolves entirely around the creation of copyrighted works?

## **CONCLUSION**

Microsoft respectfully requests that the Court sustain the Objections to NYT ECF 344, 351, 354, and 355 and AG ECF 289.

Dated:  January 27, 2025            */s/  Annette L. Hurst*

Annette L. Hurst (admitted *pro hac vice*)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: (415)773-5700
ahurst@orrick.com

Christopher Cariello
Marc Shapiro
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York: NY 10019
Telephone: (212) 506-3778
Facsimile: (212) 506-5151
ccariello@orrick.com
mrshapiro@orrick.com

Sheryl Koval Garko (admitted *pro hac vice*)
Laura Brooks Najemy (admitted *pro hac vice*)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA 02116
Telephone: (617) 880-1800
Facsimile: (617) 8801-1801
sgarko@orrick.com
lnajemy@orrick.com

Jeffrey S.  Jacobson
FAEGRE DRINKER BIDDLE
& REATH LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 248-3191
jeffrey.jacobson@faegredrinker.com

Jared B.  Briant (admitted *pro hac vice*)
Kirstin L.  Stoll-DeBell (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE
& REATH LLP

12

       1144 Fifteenth Street, Suite 3400
       Denver, CO 80202
       Telephone: (303) 607-3500
       jared.briant@faegredrinker.com
       kirstin.stolldebell@faegredrinker.com

       Carrie A. Beyer (admitted *pro hac vice*)
       FAEGRE DRINKER BIDDLE & REATH LLP
       320 South Canal Street, Suite 3300
       Chicago, IL  60606-5707
       Telephone: (312) 569-1000
       Facsimile: (312) 569-3000
       carrie.beyer@faegredrinker.com

       Elizabeth M.C. Scheibel (admitted *pro hac vice*)
       FAEGRE DRINKER BIDDLE & REATH LLP
       2200 Wells Fargo Center, 90 S. 7th Street
       Minneapolis, MN 55402
       Telephone: (612) 766-7000
       Facsimile: (612) 766-1600
       elizabeth.scheibel@faegredrinker.com

       *Attorneys for Defendant Microsoft Corporation*

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Civil Rule 7.1, I hereby certify that the foregoing document was typed using 12-point, Times New Roman font and contains 3484 words, exclusive of the case caption, table of contents, table of authorities, signature blocks, or any required certificates, but does include material contained in footnotes or endnotes.

Dated:  January 27, 2025                                  */s/  Annette L. Hurst*

                                                                            Annette L.  Hurst (admitted *pro hac vice*)