LATHAM&WATKINS LLP    MORRISON FOERSTER

**VIA ECF**
Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

    RE:    **Response in Opposition to Plaintiffs' Motion for a Protective Order re: Tom Goldstein Subpoena**, *In Re: OpenAI, Inc., Copyright Infringement Litigation*, No. 1:25-md-3143; This Document Relates To: No. 1:23-cv-11195; No. 24-cv-3285

Dear Judge Wang:

The New York Times and the *Daily News* Plaintiffs' ("Plaintiffs") motion for protective order seeks to bar Professor Tom Goldstein's deposition, even though the Court ruled that, in relation to the creation of Exhibit J,[1] OpenAI "*could depose . . . witnesses later about what they did and how they did it.*" Pls.' Mot., Ex. D at 64 (emphasis added). Additionally, although the Court previously permitted Plaintiffs to withhold document discovery into the prompts and outputs used to generate Exhibit J, it did so on Plaintiffs' unequivocal representation that "Exhibit J is not going to be relevant to this litigation moving forward," and Plaintiffs were "not going to use the examples of infringing outputs . . . going forward." *Id.* at 59–60.

Plaintiffs have now repeatedly reneged on those commitments and have continued to rely on Exhibit J throughout this litigation. In fact, when the corporate designee for the *Daily News* Plaintiffs was recently asked whether the *Daily News* Plaintiffs " ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇," he testified, "▇▇▇." OAI Ex. 1 at 479 (emphasis added). And notably, Plaintiffs' motion itself makes clear that they are reserving the right to rely on Exhibit J in their case-in-chief. *See* Pls.' Mot. at 4.

Because Plaintiffs cannot establish "good cause" warranting a protective order, the Court should (a) order Plaintiffs to produce Mr. Goldstein for deposition; and (b) order Plaintiffs to produce the prompts and outputs used to generate Exhibit J to Plaintiffs' respective complaints. *See* Fed. R. Civ. P. 26(c)(1); *Matter of Energetic Tank, Inc.*, 567 F. Supp. 3d 453, 456 (S.D.N.Y. 2021).

    **I.    The Court already ruled that OpenAI may depose witnesses regarding Exhibit J.**

The Court already ruled that OpenAI may obtain deposition discovery "about what [Plaintiffs] did" to generate Exhibit J "and how they did it." Pls.' Mot., Ex. D at 64.[2] The Court's prior ruling

---

[1] The New York Times and *Daily News* Plaintiffs' respective complaints contain an Exhibit J, both of which contain purported evidence of regurgitation. *See* No. 23-cv-11195, ECF No. 1-68; No. 24-cv-03285, ECF No. 1-10. "Exhibit J" herein refers to both exhibits, where appropriate.
[2] The Court's ruling is consistent with Judge Stein's remarks at the January 14, 2025 motion to dismiss hearing, where counsel for OpenAI explained that Plaintiffs "had to try . . . thousands or

is correct and OpenAI must be given the opportunity to depose Mr. Goldstein. It makes no difference that Plaintiffs "expect[]" Mr. Goldstein to be a testifying expert. Pls.' Mot. at 1. OpenAI seeks to ask Mr. Goldstein about the work he did in creating Exhibit J, before he was designated as a testifying expert. And as explained below, Plaintiffs have repeatedly put Exhibit J at issue, waiving any protection afforded to Mr. Goldstein's Exhibit J work. *See United States ex rel. M. Frank Higgins & Co. v. Dobco, Inc.*, 2023 WL 8868443, at *9 (S.D.N.Y. Dec. 2, 2023) (work product protection for consultant's work waivable).

Moreover, despite previously telling the Court that their "experts are not planning to rely on" the Exhibit J material, *see* Pls.' Mot., Ex. E at 51, Plaintiffs now backtrack on that commitment, arguing that "[s]hould Professor Goldstein submit a report that cites the outputs in Exhibit J, he may be questioned about that subject in his expert deposition." Pls.' Mot. at 4. But designating Mr. Goldstein as a testifying expert long after he generated the Exhibit J material does not retroactively shield him from providing testimony during fact discovery. The testimony OpenAI seeks now is not about Mr. Goldstein's expert opinions; rather, OpenAI seeks testimony about what he did to generate Exhibit J. Plaintiffs made a strategic choice to incorporate Mr. Goldstein's work into their pleadings ***and to continue to rely on it throughout two years of litigation***. Fact discovery is the proper stage to test the factual basis of those claims.

## II. Plaintiffs should be ordered to produce the prompts and outputs that led to the creation of Exhibit J.

By continuing to cite and rely on Mr. Goldstein's work, Plaintiffs have placed it squarely at issue, and they should be ordered to produce the prompts and outputs used to generate Exhibit J.[3] The work product protection "is not absolute." *United States v. Nobles*, 422 U.S. 225, 239 (1975). "A party waives the work product protection by taking actions inconsistent with . . . its purpose" to "maintain[] secrecy from adversaries." *N.Y. Times Co. v. U.S. Dep't of Just.*, 939 F.3d 479, 494–95 (2d Cir. 2019) (citations omitted). Plaintiffs took (and continue to take) actions that are fundamentally inconsistent with the work product protection.

Specifically, Plaintiffs have continued to put Exhibit J at issue, reneging on their commitment to the Court that they would not rely on it. *See* Pls.' Mot., Ex. D at 59; *id.* at 60 ("Exhibit J is not going to be relevant to this litigation moving forward . . . ."); *id.* ("There is no relevance, moving forward, to these particular examples . . . ."); *id.* at 61 ("Exhibit J or the examples in the complaint are not relevant. We're not going to rely on them moving forward."). Plaintiffs' conduct over the last several months have rendered those statements false. For example:

- At the February 13, 2026 deposition of OpenAI CEO Sam Altman, Plaintiffs questioned him repeatedly about "[t]he outputs that were publicly filed in The New York Times Complaint," including asking whether he "dispute[d] that the text that was generated in those instances came from the weights of [OpenAI's] model." Pls.' Mot., Ex. I at 139–43;

---

tens of thousands of times" to generate examples of regurgitation, prompting Judge Stein to note: "That's for discovery." Pls.' Ex. F at 21.

[3] Specifically, OpenAI seeks the production of documents showing the OpenAI accounts used to generate Exhibit J; documents regarding attempts to create Exhibit J; and documents sufficient to show the process for generating the output cited or referred to in the Complaints.

- At the February 10, 2026 deposition of former OpenAI employee Lilian Weng, Plaintiffs extensively questioned her about Exhibit J. OAI Ex. 2 at 151–55, 209–10;

- At the February 5, 2026 deposition of the *Daily News* Plaintiffs' Rule 30(b)(6) witness Frank Pine, Mr. Pine testified unequivocally that ████████████████████████████████████████████████████████████████. *See* OAI Ex. 1 at 479;

- At the February 4, 2026 deposition of Microsoft CEO Satya Nadella, Plaintiffs likewise questioned him about the "████████████████████████████████████████████████████████████████ OAI Ex. 3 at 101; *see also id.* at 26, 81;

- At the January 27, 2026 Rule 30(b)(6) deposition of OpenAI employee Vinnie Monaco, Plaintiffs questioned him about Exhibit J. OAI Ex. 4 at 72–73;

- At the June 26, 2025 technology tutorial, Plaintiffs repeatedly cited Exhibit J in their argument and demonstratives as an example of regurgitation and model memorization. *See* OAI Ex. 5 at 186–87 (pointing to Exhibit J as "examples of memorization" and arguing "we were able to get 100 examples of verbatim regurgitation . . . ."); and

- At the January 14, 2025 motion to dismiss hearing, Plaintiffs repeatedly referenced Exhibits J in their argument and demonstratives as examples of "how [the model] works" and "encode[s] or store[s]" training data. *See* Pls.' Mot., Ex. F at 7–8, 11.

Plaintiffs' continued use of Exhibit J contradicts any previous statements that it is "not relevant" or that they would not rely on it moving forward. This "affirmative and selective use of" Exhibit J waives the work product protection over the prompts and outputs used to generate Exhibit J. *See In re Actos Antitrust Litig.*, 628 F. Supp. 3d 524, 534 (S.D.N.Y. 2022) (citation omitted). Plaintiffs, in fact, cite *zero* case law to support their illogical position that they may pick and choose when to use Exhibit J for their benefit and, simultaneously, cry foul when OpenAI requests the material (as it is entitled). The law does not permit such gamesmanship. *See In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) ("[A] party cannot partially disclose privileged [material] or affirmatively rely on privileged [material] to support its claim or defense and then shield the underlying [material] from scrutiny by the opposing party.").

Accordingly, Plaintiffs should produce: (a) Mr. Goldstein for deposition; and (b) the prompts and outputs used to generate Exhibit J.[4] At a minimum, the Court should permit OpenAI to question Mr. Goldstein on the information in OpenAI's possession it believes may be related to Exhibit J, including metadata showing that a user believed to be Mr. Goldstein prompted OpenAI's models tens of thousands of times in the weeks leading up to the filing of the New York Times Complaint.

For the foregoing reasons, the Court should deny Plaintiffs' motion for a protective order.

Sincerely,

---

[4] As OpenAI's Rule 30(b)(6) witness testified in January 2025, OpenAI preserved at least some of the user account information related to the Exhibit J material. *See* OAI Ex. 6 at 97.

| KEKER, VAN NEST & PETERS LLP | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Michelle Ybarra* | */s/Elana Nightingale Dawson* | */s/ Rose S. Lee* |
| Michelle Ybarra (*pro hac vice*) | Elana Nightingale Dawson (*pro hac vice*) | Rose S. Lee (*pro hac vice*) |

4